[S. F. No. 6514. In Bank.—December 30, 1913.]

## NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Respondent, v. W. S. LAMBERT, Appellant.

Railroad—Construction Necessary to Avoid Forfeiture—Main Line and "Feeders."—Where a railroad company is by its charter authorized to construct and maintain one entire system, consisting of a main or trunk line with branches extending to various other points, the latter to operate as "feeders" of the main line, the commencement of the construction of the main line and the completion and operation thereof in obedience to the mandates of section 468 of the Civil Code, requiring every railroad company within two years after filing its articles to commence construction and every year thereafter to complete five miles of road in order to escape forfeiture, will satisfy the provisions of that section as to the entire system.

Id.—Meaning of Word "Road"—Interpretation of Sections 468 and 473 of Civil Code.—The term "road," as used in section 468 of the Civil Code, was intended to include the main line and all branches of the railroad company, and this applies both to original companies and to consolidated companies; and there is nothing in the terms of the amendment of 1901 to section 473 of the Civil Code indicating an intent to change the law in this respect.

Id.—Branch Roads—Designation as "Line of Railroad."—The designation in the articles of consolidation and incorporation of a railroad corporation of some of the numerous roads comprising its system as "a line of railroad," does not make such roads entirely independent of the main line, when it appears from the articles

of incorporation taken as an entirety that they are merely branch lines.

ID.—FORFEITURES—CONSTRUCTION OF STATUTE TO AVOID.—Statutes declaring forfeitures are not to be extended beyond their direct meaning by implication, unless such implication is imperatively necessary by reason of the subject matter or terms of the statutes.

ID.—FILING MAP OF PROPOSED ROAD—WHETHER PREREQUISITE TO EXERCISE OF EMINENT DOMAIN.—Compliance with section 466 of the Civil Code, requiring a railroad corporation within a reasonable time after its road is finally located to cause to be made a map and profile thereof "and of the land acquired for the use thereof," and to file the same in the office of the county clerk of any county through which its road will run, is not a condition precedent to the exercise of its right of eminent domain in such county.

APPEAL from a judgment of the Superior Court of Sonoma County. Thos. C. Denny, Judge.

The facts are stated in the opinion of the court.

J. R. Leppo, and E. M. Norton, for Appellant.

Lilienthal, McKinstry & Raymond, and Thos. J. Geary, for Respondent.

SHAW, J.—The appeal herein was taken to the district court of appeal of the third appellate district, it being a proceeding in eminent domain. A decision was there rendered upon an opinion by Mr. Justice Hart of that court, affirming the judgment of the superior court. Upon application of the appellant to this court the decision of the district court was vacated and the cause transferred to this court for rehearing. Upon further consideration we are satisfied with the conclusion of the district court that the judgment appealed from should be affirmed. The determination that no cause of forfeiture existed makes it unnecessary, in our opinion, to decide whether or not the statutory forfeiture declared in section 468 of the Civil Code is self-executing. The following passages from the opinion of Justice Hart clearly state the case and the main reasons showing that no cause of forfeiture existed:

"This is an action brought by the plaintiff to condemn a certain strip of land belonging to the defendant for the right

of way for the railroad of the former. Judgment, upon the verdict of the jury, passed to the plaintiff, and this appeal is prosecuted by the defendant from said judgment upon a bill of exceptions.

"It appears that the plaintiff, in the year 1906, duly incorporated for the purpose of constructing and operating a railroad for the carriage of passengers and freight; that its main line or track, as located by it, extends from the city of San Francisco to the city of Eureka, in Humboldt County; that at the time of such incorporation it acquired and became the owner of all the railroad properties, stocks, equipments, franchises, contracts, etc., etc., of the following corporations: The Northwestern Railway Company, the Eureka and Klamath River Railroad Company, North Shore Railroad Company, the San Francisco and North Pacific Railway Company, California Northwestern Railway Company, Fort Bragg and Southeastern Railroad Company, and San Francisco and Northwestern Railway Company; that the first named company, at the time of said consolidation, was the owner of all the capital stock of the other corporations; that the main line or track of the plaintiff begins at the city of San Francisco and ends at the city of Eureka, in Humboldt County; that most of the lines of railroad thus acquired by the plaintiff were branches of its main line, and that among these is the line which constitutes the particular subject of this litigation and which commences at a place called Albion, in the county of Mendocino, and runs to and connects with the main line of the plaintiff's railroad at a point at or near the town of Healdsburg, in Sonoma County. The land which the plaintiff seeks to condemn for the purpose of constructing its railroad is situated on the line last referred to.

"The answer of the defendant, besides certain denials, sets up as a special defense the failure of the plaintiff to comply with the requirements of section 468 of the Civil Code, which, among other things provides: 'Every railroad corporation must, within two years after filing its original articles of incorporation, begin the construction of its road, and must every year thereafter complete and put in full operation at least five miles of its road, until the same is fully completed; and upon its failure so to do, for the period of one year, its

right to extend its road beyond the point then completed is forfeited.'

"It was stipulated by the plaintiff and the defendant, at the trial, 'that since the said filing of plaintiff's original articles of incorporation, on December 31, 1906, plaintiff had constructed and completed that part of said line of railroad between Wendling and Christine, a distance of 2.90 miles; that the part of said railroad between Albion and Wendling, a distance of 22.85 miles, had been constructed, completed and was in full operation at the time plaintiff acquired it, on December 31, 1906; that no other part of said line of railroad than above mentioned, and no part thereof southerly from Christine to the southerly terminus at or near Healdsburg, has ever been in full or any operation, or completed, or constructed, nor has the construction thereof ever been begun. That the right-of-way over defendant's lands which it is sought to condemn in this proceeding is for a use as a part of said line of railroad and between said Albion and Healdsburg and southerly of said Christine. That the length of said part of said lines of railroad southerly from said Christine to its southerly terminus at or near Healdsburg is 44.25 miles, and is all of said line of railroad other than said portion between said Albion and said Christine.'

"One C. W. Edes, for many years the plaintiff's chief engineer, testified that he was familiar with the work done on the lines of railroad mentioned in the complaint, and that 'said plaintiff had every year since the filing of its original articles of incorporation constructed, completed, and put in full operation, at least five miles of the railroad firstly described in paragraph 2 of plaintiff's complaint (referring to the main line), and, also that the line of railroad secondly described in paragraph 2 of plaintiff's complaint (referring to the line here involved) was a branch of the railroad firstly described in said paragraph 2 of said complaint.

"The foregoing, with the plaintiff's articles of incorporation, constituted all the evidence offered and received upon the special defense interposed by the defendant. The latter thereupon moved for an abatement of the action and also for a nonsuit, which motions were denied.

"The court found that, as to the line of road from Albion to Healdsburg and the branch therefrom referred to, the

plaintiff did not comply with section 468 of the Civil Code, but that said line of road 'is, and at all times in defendant's amended answer mentioned was, a branch of plaintiff's other line of railroad firstly described in paragraph 2 of plaintiff's complaint,' referring to the plaintiff's main road. The court further found: 'That said plaintiff has each year since the filing of said original articles of incorporation constructed and completed and put in full operation at least five miles of said railroad so firstly described in paragraph 2 of plaintiff's complaint, and by reason thereof plaintiff's right to extend said line of railroad southerly from said Christine to said point at or near Healdsburg has not been forfeited.'

"The contention of the defendant is, as is evident from its special defense, that the line of railroad running from Albion to a point near Healdsburg and there intersecting the plaintiff's main line, is an independent line of railroad—that is, independent of its main line—in so far as the provisions of section 468 of the Civil Code are concerned. In other words, the claim is that, although the Albion line is owned by the plaintiff and connects with its main line, it was nevertheless necessary for plaintiff, in order to have avoided the forfeiture of its right to construct or extend the first mentioned line, to have completed and put in full operation every year after the commencement of the construction of said road at least five miles of road on that particular line.

"But the position of the plaintiff is (and the findings of the court sustain it) that the Albion line is merely a branch or a part of the entire railroad system of the plaintiff, and that the provisions of section 468 are fully satisfied if the requirements thereof are complied with as to the main line— that is to say, if at least five miles of road have been completed and put in full operation on the main line every year after the commencement of the construction thereof, then the branches or laterals referred to in the plaintiff's articles of incorporation are thus saved from the forfeiture prescribed by said section, notwithstanding that none of the work required has actually been put on such branches.

"We are inclined to the opinion that, where, as here, a railroad company is by its charter authorized to construct and maintain one entire railroad system, consisting of a main or trunk line with branches extending from such main line to

CLXVI Cal.—48

various other points, the latter to operate as 'feeders' of such main line, the commencement of the construction of the main line and the completion and operation of such line in obedience to the mandates of section 468 of the Civil Code will satisfy the provisions of that section as to the entire system. It is readily perceivable that it would be impracticable and, indeed, would result in casting a very burdensome obligation upon a corporation organized for the purpose of inaugurating and carrying out a vast railroad system, embracing a main or trunk line of great length and a large number of branches, to require it to build and put in operation in each year after its construction has been commenced five miles of road not only upon its main line but upon every branch thereof as indicated in its articles of incorporation. In many if not in most instances the branches could afford no profit to the corporation until they were connected with the main line when the latter was in actual operation. The construction which the defendant places upon section 468 would in many cases necessitate the building and putting in operation of a 'branch' road before the main line was completed to the point at which the former was to connect with the latter. It is not conceived, therefore, that the section referred to contemplates or intends, in such a case as this, that more shall be done than the construction and putting in operation each year of five miles of road anywhere upon the whole system provided for by the corporation's charter."

Some additional points remain to be noticed. The articles of consolidation and incorporation, constituting the plaintiff's charter, designate some of the numerous roads comprising its railroad system as "a branch," and others as "a line of railroad," and still others as "a branch" from some one of these "lines." The line extending from Albion to Healdsburg, over the defendant's land sought to be condemned, is designated in said articles as "a line of railroad," and is described in the same manner in the complaint. From this the plaintiff argues that it is not a branch line but a road entirely independent of the main trunk line from Eureka to San Francisco, with which it is to connect at Healdsburg. We do not think these words were intended to have such significance. The articles of incorporation must control upon this point, and they should be considered as an entirety. So considered,

it is plain that the line from Eureka, in Humboldt County, to San Francisco, is what is usually designated the main trunk line of the company, and that the other lines, whether denominated "a line of railroad" or "a branch," are in truth mere parts of the general railroad system which the company proposes to complete, maintain, and operate as a whole. The terms "line of railroad" and "branch" are simply convenient terms of description. The former was not used to convey the idea that the lines to which it is applied were to be, or were, in any sense, independent of the trunk line and general system described. Section 473 of the Civil Code, as amended in 1901, [Stats. 1901, p. 327], requires the articles of a consolidated railroad corporation, such as the plaintiff is, to state, "the termini of its road and branches," and "the estimated length of its road and branches." In the original section, as enacted in 1872, the part of section 468 here applicable was in the same language as it is now, but section 473 did not then prescribe the form of articles of incorporation, leaving that matter to be controlled by section 291, which then required, and now requires, articles of incorporation of a railroad company to state "the place from and to which it is intended to be run and all the intermediate branches." It seems clear that the term "road," as used in section 468, was intended to include the main line and all branches of the company, and that this applied both to original companies and to consolidated companies. We find nothing in the terms of the amendment of 1901 to section 473 indicating an intent to change the law in this respect. Statutes declaring a forfeiture are not to be extended beyond their direct meaning by implication, unless such implication is imperatively necessary by reason of the subject matter or terms of the statute. We find nothing requiring such extension in the statute under consideration. The system described in the articles of incorporation of the plaintiff must be deemed to be the "road" of which, by section 468, five miles must be constructed each year in order to escape the forfeiture therein declared.

The appellant also sets up as a defense by way of abatement that the plaintiff, at the time the action was begun, had not filed in the office of the county clerk any map and profile of the part of the road within the county, "and of the land ac-

quired for the use thereof," as required by section 466 of the Civil Code, and this the court found to be true. This filing, it is claimed, is by that section made a condition precedent to the existence of a right in the company to acquire land in that county by proceedings in condemnation. The section provides that such map and profile must be so filed "within a reasonable time after its road is finally located." There is nothing indicating that the right to resort to eminent domain to acquire land for the use of the road was to be dependent on the previous filing of such map and profile. The requirement that the map and profile must include "the land *acquired* for the use thereof" rather implies the contrary. Other reasons lead to the same conclusion. No condition of that character is stated in section 1001 of the Civil Code giving the right of eminent domain to any "person" (which includes a corporation), seeking to acquire property for any of the uses specified in section 1238 of the Code of Civil Procedure. Section 1238 specifies railroads as one of the public uses for which property may be taken, and it prescribes no such condition as is here contended for. There is nowhere in the statute relating to this subject any express statement of such condition, or any language from which such condition can be fairly implied. In such a case the court cannot reasonably supply the condition by construction. There is nothing in the statute to show that the provision of section 466 of the Civil Code requiring the filing of such map and profile has any relation to the maintenance of an action to condemn property.

This embraces all the questions presented in the case.

The judgment is affirmed.

Sloss, J., Angellotti, J., Lorigan, J., Melvin, J., and Henshaw, J. concurred.