. [Sac. No. 2922. In Bank.—June 20, 1921.]

STATE OF CALIFORNIA, Respondent, v. SAVINGS UNION BANK AND TRUST COMPANY (a Corporation), et al., Appellants.

[1] ESCHEAT—BANK DEPOSIT—ACTION BY STATE—REVERSAL OF JUDGMENT IN DIFFERENT ACTION—DECISION NOT LAW OF CASE.—In an action by the state against a bank to obtain a judgment declaring that a sum of money on deposit in the name of a depositor had escheated to the state, the decision of the district court of appeal reversing the judgment in an action by the administrator of the estate of the depositor to recover the deposit wherein it was declared that there had been no escheat was not the law of the case, since such decision was not rendered in the same action.

[2] ID.—JUDICIAL PROCEEDING ESSENTIAL TO ESCHEAT.—Some judicial proceeding is necessary to perfect an escheat, as otherwise one would be divested of his title without due process of law in violation of section 1 of article I of the constitution of this state and the fourteenth amendment of the constitution of the United States.

[3] ID.—ESCHEAT OF BANK DEPOSITS—STATUTORY FORFEITURE.—The escheat of bank deposits provided for in section 1273 of the Code of Civil Procedure is in the nature of a statutory for-

---

3. Escheat of bank deposits, note, **Ann. Cas.** 1914B, 157.

feiture, and the rules applying to forfeitures are therefore applicable.

[4] Id.—Judicial Proceeding—Construction of Code.—The provision of section 1273 of the Code of Civil Procedure that bank deposits unclaimed for twenty years as therein stated shall escheat to the state must not be taken as intending to provide for an immediate escheat, but as providing that the same shall be taken over by the state as an escheat when so adjudged in the action provided for.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Reversed.

The facts are stated in the opinion of the court.

Lovett K. Fraser, H. V. Keeling and Pillsbury, Madison & Sutro for Appellants.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

SHAW, J.—This is an action begun in the superior court of Sacramento County, upon the authority of section 1273 of the Code of Civil Procedure, to obtain a judgment declaring that the sum of $12,525.52, on deposit in the defendant Savings Union Bank and Trust Company in the name of William Anderson, has "escheated to the state, and commanding said bank to forthwith deposit" said money with the state treasurer, as in that section provided. Judgment was given for the plaintiff in accordance with the prayer of the complaint.

The history of the case presents some unusual features. In 1868 William Anderson deposited money with the defendant corporation, then known as Savings and Loan Society. The account was continued until, in 1891, there was $6,198.19 to the credit thereof. After that time there were no further deposits or withdrawals made. The accumulated interest up to January 1, 1917, increased the amount to $12,525.52. In 1878 Anderson settled in Lake County and there resided until his death, which occurred on August 13, 1892. He was unmarried. There was no administration had upon his estate until in March, 1917, when Mack Mathews, public administrator of that county, was duly appointed administrator thereof. On June 11, 1917, Mathews,

as such administrator, began an action in the superior court of San Francisco County against said defendant corporation to recover said sum of money. On June 22, 1917, the attorney-general on behalf of the state, intervened in that action, claiming that the fund belonged to the state of California. On July 30, 1917, the state began the present action in the superior court of Sacramento County for the purpose first above stated. Said Mathews appeared and answered, denying that there had been an escheat, and set up the defense that the action in San Francisco County to recover the money was then pending. The San Francisco case first came to trial and judgment was given for the defendants. From that judgment plaintiff Mack Mathews appealed to the supreme court. While this appeal was pending the present action came to trial in Sacramento County and resulted in the judgment here appealed from. The appeal of Mathews from the judgment in San Francisco County was transferred to the district court of appeal, and on August 26, 1919, the judgment of that court was given reversing the judgment of the superior court therein and declaring that there had been no escheat; that the money belonged to the estate of Anderson, and that the administrator thereof was entitled to payment of the deposit. (*Mathews* v. *Savings Union Bank & Trust Co.*, 43 Cal. App. 45, [184 Pac. 418].) The defendant and the intervener petitioned this court for a rehearing of said cause and their petition to that effect was denied.

Section 1273 aforesaid provides that "All amounts of money heretofore or hereafter deposited with any bank to the credit of depositors who have not made a deposit on said account or withdrawn any part thereof or the interest, and which shall have remained unclaimed for more than twenty years after the date of such deposit, or withdrawal of any part of principal or interest, and where neither the depositor or any claimant has filed any notice with such bank showing his or her present residence, shall, with the increase and proceeds thereof, escheat to the state." It then provides that when the attorney-general is informed of such deposits he shall begin an action in the name of the state in the superior court of Sacramento County against the bank in which the deposit is made and the person named as depositor therein, and that upon the trial, if it be determined that the moneys

in the defendant bank or banks are unclaimed as first above stated, that court must render judgment "declaring that said moneys have escheated to the state and commanding said bank or banks to forthwith deposit all such moneys with the state treasurer," to be kept, received, and paid out as "in the case of other escheated property." The facts proven bring the case within the conditions of the first clause of the section as above quoted. This section was added to the code by the legislature of 1915. (Stats. 1915, p. 107.) Section 15 of the Banking Act had previously provided that all moneys on deposit in any bank to the credit of depositors who had not made a deposit or withdrawn any part thereof or the interest for twenty years and had not filed any notice with the bank showing his or her present address should be deposited with the state treasurer as provided in section 1234 of the Code of Civil Procedure. Section 1234 is a part of the chapter providing for the voluntary dissolution of corporations, and section 1234 relates to the disposition of unclaimed moneys on deposit in savings banks and the like upon such dissolution and directs payment thereof to the state treasurer. It did not provide for any suit to declare an escheat or provide for an escheat in any manner, but it did provide that the moneys so paid in "must be received, invested, accounted for, and paid out, in the same manner and by the same officers as is provided by law in the case of escheated estates, and in section twelve hundred and seventy-two." In 1915 the legislature amended section 15 of the Banking Act (Stats. 1909, p. 87) so as to provide that such moneys should "be deposited with the state treasurer after judgment in the manner provided in the Code of Civil Procedure," referring to section 1273 thereof. The aforesaid decision of the district court of appeal was to the effect that an escheat under these sections did not take effect until final judgment in the action, as provided for in section 1273 of the Code of Civil Procedure, and that the money did not escheat nor title thereto pass to the state at the expiration of the twenty years mentioned in said section.

[1] The judgment in the action before the district court of appeal does not constitute a former adjudication with respect to this case, because the district court reversed the judgment and remanded it for a new trial, so that at the time the judgment in the present case was rendered there

had been no judgment in the other action. The decision of the district court is not the law of the present case because it was not rendered in the same action. The attorney-general earnestly insists that it is an erroneous statement of the law and asks that it be overruled.

Upon further consideration we are satisfied with the law as stated in that decision. Further argument renders it appropriate to make some additional observations on the subject.

The precise claim of the state is that the declaration in section 1273 that the money which has remained on deposit twenty years under the conditions therein stated "shall, with the increase and proceeds thereof, escheat to the state," accomplishes an instantaneous escheat; that the only purpose of the action therein provided for is to obtain an adjudication that the escheat had already occurred and an order for the transfer of the money from the bank to the state treasurer; that it is really for the protection of the bank against other claims to the money and is not in any sense for the benefit of the person who made the deposit or those claiming under him, and that neither the original owner nor his heirs, assigns, or personal representatives may claim the money by virtue of a demand made after the twenty years had run. The sole questions presented are whether or not the statutes so provide, and, if they do, whether or not they are invalid for the reason that in that event they provide for the taking of property without due process of law.

Under the ancient common law there were escheats of two kinds. The first included all cases where the owner of land died without competent heirs to take the property. In these cases it was said that because there was no one else to take it the land reverted to and vested in the king, who "was esteemed in the eye of the law the original proprietor of all the lands in the kingdom." (1 Cooley's Blackstone, *302; Bouvier's Law Dictionary, "Escheat.") In this country the respective states have the attributes ascribed by the law of England to the crown in this respect and the state is the recipient of all escheats caused by lack of heirs or otherwise. This form of escheat proceeds on the theoretical assumption that the line of descent has failed and that there are technically no heirs in existence. There is a variation thereof where persons who would otherwise be heirs are

barred from inheriting. It is, however, "a presumption of law that every intestate has left some one on earth entitled to claim as his heir however remote." (*People* v. *Roach,* 76 Cal. 297, [18 Pac. 409].) Practically, therefore, omitting the variation above mentioned, it is meant that no lawful heirs can be found. The other form of escheat at common law occurred where the owner of the property had committed felony or treason and had thereby forfeited his right to hold the same. (2 Cooley's Blackstone, 73, 246; Bouvier's Law Dictionary, *supra.*) An escheat under subdivision 9 of section 1386 of the Civil Code occurs when there are no heirs and it is of the kind first mentioned, which does not imply or require a forfeiture as a condition precedent thereto. [2] With respect to either kind of escheat our decisions held that some judicial procedure is necessary to perfect the escheat. "By the civil law as well as the common law, the king cannot take upon himself the possession of an estate said to have escheated, until the fact is judicially ascertained by a proceeding in the nature of an inquest of office; and in this there is a difference from the case of a forfeiture for want of the performance of conditions precedent; for in the latter, the conditions never having been performed, the title has not vested. An alien may hold real estate against everyone, and even against the government, until office found." (*People* v. *Folsom,* 5 Cal. 379.) This doctrine has been repeatedly stated and followed in subsequent decisions. (*De Merle* v. *Mathews,* 26 Cal. 477; *Racouillat* v. *Sansevain,* 32 Cal. 386; *State* v. *Smith,* 70 Cal 156, [12 Pac. 121].) There is some conflict of authority on this question, some states holding to the doctrine that title to an escheat vests immediately in the state upon the happening of the act which causes it (4 Kent, 424), but in this state, as above shown, the other doctrine is followed.

[3] The escheat provided for in section 1273, and upon which it is here claimed that the title vested absolutely and immediately in the state, is an escheat of the second kind. It takes place whether the owner of the deposit is living or dead and is accomplished without any fault of his. Although he may be well aware that he has the deposit and may intend to keep it for his own use, the claim of the state is that he is deprived thereof at once at the expiration of the twenty-year period regardless of his wishes in the matter. It is in

the nature of a statutory forfeiture and the rules applying to forfeitures are therefore applicable. "Statutes declaring a forfeiture are not to be extended beyond their direct meaning by implication, unless such implication is imperatively necessary by reason of the subject matter or terms of the statute." (*Northwestern etc. Co.* v. *Lambert,* 166 Cal. 755, [137 Pac. 1119].) It is also clear that the effect of the statute as it is claimed to be by the state would be to divest a person of his title without any proceeding against him for that purpose and would manifestly be a taking of property without due process of law. Under the provisions of the fourteenth amendment of the constitution of the United States, and of section 1, article I, of our constitution, such taking would not be within the power of the state and the statute purporting to provide therefor would be void. "When a legislative provision is capable of two constructions, one consistent and the other inconsistent with the provisions of the constitution, it is a well-recognized principle of construction that the statute should be given that construction which will make it harmonious with the constitution and comport with the legitimate powers of the legislature." (*Chesebrough* v. *San Francisco,* 153 Cal. 567, [96 Pac. 291].)

[4] In view of these rules of construction, and of the fact that the statute would be utterly void if given the meaning attributed to it by the attorney-general, we are of the opinion that the provision of section 1273 that bank deposits unclaimed for twenty years, as there stated, shall escheat to the state, must not be taken as intending to provide for an immediate escheat, but as providing that the same shall be taken over by the state as an escheat when so adjudged in the action so provided for. This is the effect of the decision in *Estate of Miner,* 143 Cal. 194, [76 Pac. 968], although in that case this particular statute was not considered, that case having been decided before its enactment. For these reasons, in addition to those given by the district court of appeal, we think the court erred in holding that the property had escheated to the state.

The judgment is reversed.

Wilbur, J., Sloane, J., Olney, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.