[No. B160741. Second Dist., Div. Eight. Jan. 29, 2004.]

GENE HARRIS et al., Plaintiffs and Appellants, v.
STEVE WESTLY, as Controller, etc., Defendant and Respondent.

**COUNSEL**

Law Office of William W. Palmer, William W. Palmer; Magana, Cathcart & McCarthy, Peter T. Cathcart and Clay Robbins III for Plaintiffs and Appellants.

Remcho, Johansen & Purcell, Robin B. Johansen and James C. Harrison for Defendant and Respondent.

**OPINION**

**BOLAND, J.—**

## SUMMARY

■ The notice provisions of the Unclaimed Property Law do not require the Controller to provide notice to apparent owners of escheated stock before the Controller sells the stock. Sale of escheated stock without notice to the owners does not violate the due process provisions of the federal or state Constitutions.

## FACTUAL, PROCEDURAL AND LEGAL
## BACKGROUND

Gene Harris, Peggy Lee Dominguez, Annette Schoon, Russ Garcia and Julianne Jackson (collectively, Harris) worked for GTE Corporation during the 1970's and 1980's. In June 2000, GTE merged with Bell Atlantic to create Verizon. During the period March 2000 to September 2001, Harris and the others learned they owned stock in GTE that had been transferred to the State of California and sold without their knowledge. They retained counsel, and an investigation revealed that GTE had issued duplicate shareholder certificates and delivered them to the California Controller. The Controller's records show the stock escheated to the State of California on November 1, 1990. The Controller sold the stock, without notice to Harris, and deposited the funds from the sale in the Unclaimed Property Fund. The Controller's records show that Harris, Dominguez, Schoon and Garcia filed claims and, on various dates in 1999, received payment for their shares of GTE stock from the State of California. The Controller has no record of any claim by Jackson.

Harris and the others filed a class action complaint against the Controller on September 24, 2001.[1] They alleged the Controller had a statutory obligation to provide notice to the stock owners, by direct mail to known owners and by publication, and failed to do so because of lack of resources and impracticality.[2] The Controller's "taking and sale [of the stock] without notice and due process" assertedly violated several provisions of the United States and California Constitutions, California and federal securities laws, and the Unclaimed Property Law (Code Civ. Proc., §§ 1500–1582). As a result of the Controller's conduct, Harris and class members were deprived of their shareholder rights and suffered significant monetary losses, including the growth in value of the stock and significant capital gain taxes triggered by the involuntary liquidation of their stock investments. Harris sought declaratory relief, an accounting, injunctive relief ordering the Controller to comply with the law and return the stock to Harris and the other class members, and recovery of attorney fees.

The trial court granted the Controller's motion for judgment on the pleadings. The court concluded that the Controller was required by law to sell

---

[1] The allegations in the complaint that Harris learned about the GTE stock in 2000 or 2001 are inconsistent with the dates in the Controller's records, which show payment to Harris for the stock in 1999.

[2] The complaint is not entirely clear, as it appears to meld GTE's duties with those of the Controller. The complaint asserts that the Controller had a statutory obligation "to provide notice to the stock owners by (1) direct mail to known owners; (2) publication of the specific name, last known address in a newspaper publication calculated to reach the owner within 180 days and prior to issuing a duplicate set of stock certificates to and for sale by the State of California, in addition to the companies' fiduciary common law and statutory relationship to their shareholders."

the property; the Controller was afforded immunity for the sale; and no notice of pending sale of securities was required under the Unclaimed Property Law. Judgment was entered in favor of the Controller on June 26, 2002, and this appeal followed.

## DISCUSSION

Harris alleges, and we assume for purposes of review, that the Controller did not comply with the notice provisions of section 1531 of the Unclaimed Property Law (hereafter, UPL). That section requires notice by publication, within one year of delivery of escheated property to the state, and in some cases requires notice by mail to the apparent owner. (Code Civ. Proc., § 1531.)[3] The Controller's failure to comply with section 1531, Harris contends, violates the owners' constitutional rights and deprives the Controller of the immunity from suit to which he would ordinarily be entitled under section 1566 of the UPL. Harris's contentions are without merit. We first describe the statute in general terms, and then analyze Harris's claims.

1. *Statutory overview.*

■ The UPL establishes the conditions under which certain unclaimed personal property escheats to the state. The UPL is not a permanent or "true" escheat statute. Instead, it gives the state custody and use of unclaimed property until such time as the owner claims it.[4] Its dual objectives are "to protect unknown owners by locating them and restoring their property to them and to give the state rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed." (*Douglas Aircraft Co. v. Cranston* (1962) 58 Cal.2d 462, 463 [24 Cal.Rptr. 851, 374 P.2d 819]; *Bank of America v. Cory* (1985) 164 Cal.App.3d 66 [74, 210 Cal.Rptr. 351].)

■ The UPL requires holders of unclaimed property—banking or financial organizations, business associations including corporations, and so on—to file reports and to pay or deliver the unclaimed property to the Controller. For example, a corporation such as GTE is required to file a report and to transfer stock to the Controller when the owner has not claimed a dividend or other sums or corresponded or otherwise indicated an interest in the stock for three years, and the corporation does not know the location of the owner at the end of that time. (§ 1516, subd. (b).)[5] The UPL contains

---

[3] All further statutory citations are to the Code of Civil Procedure.

[4] Section 1501.5 provides that "[n]otwithstanding any provision of law to the contrary, property received by the state under this chapter shall not permanently escheat to the state." (§ 1501.5, subd. (a).)

[5] The UPL requires the holder of escheated property to report the name and last known address of persons appearing to be the owner of the property, and information identifying or

notice provisions, requiring the Controller to publish notices and in some circumstances to mail notices to apparent owners. (§ 1531.)[6]

■ Article 5 of the UPL governs the Controller's administration of property after it is paid or delivered to the Controller. Dividends accruing on stock prior to its liquidation or conversion to money must be credited to the owner's account (§ 1562), and the Controller is required to sell escheated property. (§ 1563.) Securities listed on an established stock exchange must be sold at prevailing prices on that exchange. (*Id.*, subd. (b).) Proceeds from the sale must be deposited in an account titled "Abandoned Property" in the Unclaimed Property Fund.[7] (§ 1564, subd. (a).)

Article 4 of the UPL sets forth procedures for filing claims. (§ 1540.) Until recently, the Controller was required to add interest to the amount of any claim paid to the owner for the time the property was deposited in the Unclaimed Property Fund.[8] A person may file suit to establish a claim if he or she is aggrieved by a decision of the Controller, or if the Controller fails to make a decision on a claim within a specified time. (§ 1541.)

> 2. *The Controller's failure to comply with statutory notice provisions does not operate to restrict his statutory duty to sell the escheated shares.*

■ Harris claims that owners of unclaimed stock are entitled to notice that the stock has escheated to the state before the state may liquidate or convert the stock into money. We conclude from our review of the statute that the notice provisions are neither substantively nor procedurally related to the sale provisions of the UPL. That is, the Controller's compliance with the

---

describing the property. (§ 1530.) Every person filing such a report must pay or deliver to the Controller all escheated property specified in the report at the same time the report is filed. (§ 1532, subd. (a).) In the case of corporate shares, the holder must deliver a duplicate certificate to the Controller. (*Id.*, subd. (b).)

[6] Since 1993, the UPL has also required corporations and other business associations to make reasonable efforts to notify the owner that his or her stock will escheat to the state. The corporation must give such notice not less than six months nor more than 12 months in advance of the time when the corporation is required to report to the Controller. (§ 1516, subd. (d).) Additional requirements concerning the contents of the notice became operative in 2004. (Stats. 2002, ch. 813, § 2, eff. Jan. 1, 2004.)

[7] At the end of each month, or more often if advisable, the Controller must transfer all money in the Abandoned Property Account in excess of $50,000 to the General Fund, first recording the name and last known address of each person appearing to be entitled to the escheated property, and keeping that record available for public inspection. (§ 1564, subd. (c).)

[8] Section 1540 was amended in 2003 to eliminate the requirement that the Controller pay interest on claims paid to owners. (§ 1540, subd. (c), as amended by Stats. 2003, ch. 228, § 8, eff. Aug. 11, 2003.)

notice provisions of section 1531 is not a condition precedent to his statutory obligation to liquidate escheated personal property. This is apparent for a number of reasons.

First, no provision of the statute suggests the owner of unclaimed property that escheats to the state is entitled to an in-kind return of the property. Indeed, the statutory objective of giving the state the beneficial use of the property effectively requires conversion of escheated property to cash. Thus, the UPL specifies that anyone claiming an interest in escheated property may "file a claim to the property or to the net proceeds from its sale." (§ 1540, subd. (a).)

Second, the timing requirement in the notice provision (§ 1531), and the absence of any timing restriction in the sale requirements (§ 1563), likewise confirm the lack of connection between these two separate duties of the Controller.[9] Section 1531, as it read in November 1990 when GTE delivered Harris's shares to the Controller, stated: "(a) Within one year after payment or delivery of escheated property . . . , the Controller shall cause a notice to be published, in a newspaper of general circulation which the Controller determines is most likely to give notice to the apparent owner of the property."[10]

In addition, section 1531 then stated: "Within 180 days after payment or delivery of escheated property . . . , the Controller shall mail a notice to each person having an address listed therein who appears to be entitled to property of the value of twenty-five dollars ($25) or more escheated under this chapter."[11]

By contrast, section 1563, as read in 1990, provided that "[s]ecurities listed on an established stock exchange shall be sold at the prevailing prices on

---

[9] The notice provision appears in Article 3 of the UPL, which governs the identification of escheated property. The sale requirements are in Article 5, which governs the administration of unclaimed property.

[10] Former Code of Civil Procedure section 1531, subdivision (a), as amended (Stats. 1990, ch. 450, § 13, p. 1905, eff. July 31, 1990). The notice was to be entitled " 'notice of names of persons appearing to be owners of unclaimed property.' " The notice was required to contain the names in alphabetical order, along with a statement that information concerning the amount or description of the property could be obtained from the Controller. (Former § 1531, subds. (b) & (c).) The notice provision was changed in 1996, and no longer requires the published notice to contain the names of apparent owners. (See § 1531, subds. (a)–(c).)

[11] Former Code of Civil Procedure section 1531, subdivision (e), as amended (Stats. 1990, ch. 450, § 13, p. 1905, eff. July 31, 1990). This provision no longer exists in the quoted form. Notice by mail is now required only if an account delivered to the Controller includes a social security number. In that case, the Controller must ask the Franchise Tax Board for a current address on the basis of the social security number, and must mail a notice to the apparent owner if the address is different from the address previously reported to the Controller. (§ 1531, subd. (d).)

such exchange." (Former Code Civ. Proc., § 1563 (Stats. 1968, ch. 356, § 37, p. 753, eff. Jan. 1, 1969).) No time constraint or other condition was placed on the Controller's obligation to sell escheated securities. Thus the Controller was given a year to publish a notice to owners of unclaimed property, but was free to sell the escheated securities at any time. Neither section 1563 nor any other provision of the UPL required the Controller to wait any period of time after the publication or mailing of notice before selling the escheated securities, or otherwise established any connection between the sale requirements of the statute and its notice provisions. In short, nothing prevented the Controller from selling securities immediately upon receipt or at any other time.[12]

> 3. *The sale of unclaimed securities, without first giving notice to the apparent owner, does not violate the owners' due process rights.*

Harris contends the Controller's failure to comply with the UPL's notice provisions unconstitutionally deprived the owners of their property without due process of law, citing *Standard Oil Co. v. New Jersey* (1951) 341 U.S. 428 [95 L.Ed. 1078, 71 S.Ct. 822] and *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652].[13] We disagree. First, while Harris and the other owners were allegedly deprived of securities they did not know they owned, they were not deprived of the proceeds of those securities. Harris refers to no principle of law, and we know of none, entitling a shareholder who has lost track of his or her shares to require the state to ensure that those unclaimed securities are not converted to cash without prior notice to the shareholder.

Second, neither *Standard Oil* nor *Mullane* aids Harris. *Standard Oil* stands for the unexceptional proposition that adequate notice is required before a

---

[12] In 1993, the law was changed to require the Controller to sell escheated securities within one year following their receipt. (Former Code Civ. Proc., § 1563, as amended (Stats. 1993, ch. 692, § 6, p. 3993).) Today, the Controller is required to sell such securities within two years of receipt by the Controller. (§ 1563, subd. (b).) The elimination of the one-year time limit in 1996 (Stats. 1996, ch. 762, § 9) was intended to allow more flexibility in determining the most advantageous time to sell a given security. (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 2014 (1995–1996 Reg. Sess.) as amended June 12, 1996, p. 2.)

[13] Harris's brief uses and quotes versions of section 1531 that have not been in effect since the statute was amended effective July 31, 1990. Harris suggests the statute required the Controller to include certain information in the mailed notice, and says the statute provided that "mail notice to, and a failure to respond by, an owner of unclaimed property are conditions precedent to placing the property in the Controller's custody . . . ." However, the pre-July 31, 1990 version of the statute is irrelevant, as it is undisputed that Harris's stock escheated to the state on November 1, 1990. Section 1531 at that time required the Controller to publish notice within one year of delivery of the escheated stock to the state; the mail notice, when applicable, was to be given within 180 days. Notice to the apparent owner was not a "condition precedent" to placing the property in the Controller's custody.

court may properly enter a final judgment ordering permanent escheat of personal property to the state. (*Standard Oil Co. v. New Jersey, supra,* 341 U.S. at pp. 432–435 [finding notice adequate].) *Mullane* held that notice by publication was constitutionally inadequate as a basis for an adjudication depriving known nonresidents, whose whereabouts were also known, of substantial property rights. (*Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. at p. 320.)[14] This case, however, does not involve permanent escheat to the state, or any other adjudication of Harris's property rights. Indeed, the statute is explicit in its provision to the contrary. (§ 1501.5, subd. (a) ["property received by the state under this chapter shall not permanently escheat to the state"].) In short, Harris was deprived, at most, of one form of unclaimed property in favor of another. We perceive no constitutional dimension to that deprivation under the circumstances.[15]

■ Harris insists the Controller cannot be immunized "for violations of private citizens' constitutional rights," that the Controller "seized valuable property from" him and others in the proposed class, and that "these facts add up to a seizure of private property without just compensation." As discussed, the conversion of Harris's unclaimed securities to cash under the circumstances involves no constitutional ramifications.[16] While we do not condone any failure by the Controller to provide the notice required by statute, we cannot rewrite the statute to create the remedy Harris requests. We discern no basis for holding that the Controller's alleged failure to comply with one

---

[14] In *Texaco, Inc. v. Short* (1982) 454 U.S. 516, 535 [70 L.Ed.2d 738, 102 S.Ct. 781], the Supreme Court observed that the due process standards of *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. 306, apply to an adjudication that is to be accorded finality, rather than to a situation in which the state has enacted a general rule of law governing the abandonment of property.

[15] See *Texaco, Inc. v. Short, supra,* 454 U.S. 516, in which the Supreme Court rejected due process notice claims and upheld an Indiana statute providing that a mineral interest that is not used for 20 years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner filed a statement of claim. The statute allowed a two-year grace period after its enactment for a mineral owner to file a claim and prevent the automatic lapse of his interest. (*Id.* at pp. 523–524.) The statute did not require any notice to the mineral owner before the statutory lapse. The Court upheld the statute against claims the statute extinguished the mineral owner's property rights without adequate notice. (*Id.* at p. 531.) The Court stated, among other things, that persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or disposition of the property. (*Id.* at p. 532.) The owners had no constitutional right to be advised that their property rights were about to lapse. (*Id.* at pp. 533–534.) Thus, in *Texaco,* the statute itself was sufficient notice of extinguishment of property rights and no other notice was constitutionally required. In this case, there was not even an extinguishment of the owners' property rights, but merely a liquidation of their securities.

[16] See *Texaco, Inc. v. Short, supra,* 454 U.S. at page 530 ("after abandonment, the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property——and not the action of the State——that causes the lapse of the property right; there is no 'taking' that requires compensation").

provision of the statute operates to prevent him from carrying out the duties mandated under other statutory provisions. The statute does not require notice be given under section 1531 before securities may be sold under section 1563, and the sale results in no constitutional deprivation. Accordingly, failure to publish or mail notice under section 1531 does not require the Controller to return the securities, or the current fair value of the securities, to Harris.

> 4. *Harris's contention the Controller lost the immunity from suit provided by the UPL when he failed to comply with the notice provisions of the statute lacks merit.*

■ Harris also argues that the owners may sue the Controller for the return of their securities, because the Controller's failure to comply with the notice provisions of section 1531 deprives the Controller of his immunity from suit under section 1566. This contention, assuming it is pertinent in light of our previous conclusions, is mistaken. Section 1566, subdivision (b), states that: "Except as provided in Section 1541, no suit shall be maintained by any person against the state or any officer or employee thereof for or on account of any transaction entered into by the State Controller pursuant to this chapter."[17] Harris's theory is, if the Controller does not comply with the notice provisions of section 1531, he "does not get the immunity." The plain meaning of section 1566 is to the contrary. Harris contends the sale of the securities was not a transaction entered into "pursuant to this chapter" because the Controller did not give notice to the owners under section 1531 before selling the securities. However, the Controller sold the escheated securities as authorized by the UPL. As discussed *ante*, nothing in the statute required him to give notice prior to the sale. Accordingly, the unavoidable conclusion is that the Controller's sale of securities was a transaction "pursuant to this chapter" for which the Controller is immune from suit.[18]

---

[17] Section 1541 allows any person aggrieved by the Controller's decision on a claim, or by the Controller's failure to make a decision within 180 days after filing of a claim, to file a lawsuit, and contains deadlines for such suits.

[18] Previous versions of section 1563, the provision requiring the sale of securities and other escheated property, confirm the point. Until 1968, section 1563 (then section 1516) provided immunity to the state and any officer "for or on account of any transaction entered into pursuant to and in accordance with the provisions of *this section* [sale of escheated property]." (Former Code Civ. Proc., § 1516, subd. (d), added by Stats. 1963, ch. 669, § 1, p. 1657, and repealed by Stats. 1968, ch. 356, § 37, p. 753, italics added.) That provision was deleted in 1968 "as unnecessary in light of the broader provisions of Section 1566." (Cal. Law Revision Com. com., 19A West's Ann. Code Civ. Proc. (1982 ed.) foll. § 1563, p. 561.)

## DISPOSITION

The judgment is affirmed. The Controller is to recover his costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

On March 3, 2004, the opinion was modified to read as printed above.