[No. B194764. Second Dist., Div. Eight. June 3, 2008.]

LEAH MORRIS, Plaintiff and Appellant, v.
JOHN CHIANG, as State Controller, etc., Defendant and Respondent.

## COUNSEL

Law Offices of Randall David Smith, Randall D. Smith; Susman, Heffner & Hurst, Arthur T. Susman, Glenn Hara; Futterman Howard Watkins Wylie & Ashley, Futterman Howard Watkins, John R. Wylie and Charles R. Watkins for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Stacy Boulware Eurie and Christopher E. Krueger, Assistant Attorneys General, Jonathan K. Renner, Douglas J. Woods, Leslie R. Lopez and Susan K. Leach, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**COOPER, P. J.**—Plaintiff, Leah Morris, appeals from summary judgment granted to defendant, the State Controller (controller), in a class action for equitable relief from alleged unconstitutional takings of property, namely interest "and other accruals" on unclaimed property held by the controller under the Unclaimed Property Law, Code of Civil Procedure section 1500 et seq. (UPL; undesignated section references are to the Code of Civil Procedure). The trial court ruled that the UPL did not work such a taking. We agree with that conclusion, and affirm the judgment.

## FACTS

The UPL governs the state's handling and disposition, generally through the controller, of property such as bank accounts and securities, held by entities such as banks, brokerage firms, and insurance companies, the owners of which have not acknowledged or claimed their interest in for several years,

generally three. Such property by statute escheats, nonpermanently, and the holder must transfer it to the controller. The controller sells the property (other than money), and deposits the proceeds in an unclaimed property fund, from which the controller pays approved claims, as well as expenses of administering the property. The contents of the account are regularly transferred to the general fund. (§§ 1563–1564.) When the original owner or a person claiming thereunder claims the property, and the controller approves the claim, the controller pays the amount to the claimant. (§ 1540.) No interest is payable on the claim (§ 1540, subd. (c)), and any interest or other accruals derived from the unclaimed property fund are deposited in the general fund. (§ 1562.)[1] The purposes of the UPL are to protect the owners of unclaimed property, by finding them and restoring their property to them, and " 'to give the state rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed.' [Citations.]" (*Harris v. Westly* (2004) 116 Cal.App.4th 214, 219 [10 Cal.Rptr.3d 343].)

The described escheat of unclaimed property under the UPL differs from traditional, "permanent escheat." Permanent escheat, which generally requires a judicial proceeding, constitutes "the absolute vesting in the state of title to property . . . ." (§ 1300, subd. (d).) Nonpermanent " '[e]scheat' " "means the vesting in the state of title to property . . . subject to the right of claimants to appear and claim the escheated property . . . ." (§ 1300, subd. (c).)[2]

Plaintiff filed her complaint on behalf of herself and a class consisting of persons (excluding California state and federal judges) whose property, taken into custody under the UPL, had while in state custody earned either interest, dividends or other accruals that were used to fund state programs, or "allowed the state to forego borrowing like amounts," for which the state had not paid compensation. The controller had paid plaintiff the money she had claimed (later stipulated to be $6,334.07), but had not paid her any interest earned on that principal or the interest the state had saved by not having to borrow the amount. The complaint alleged that the UPL was "purely custodial . . . and title to unclaimed property is never transferred from the owner to the defendant or the State of California." Plaintiff alleged that the retention of interest earned on such private funds constituted a taking, and that unearned interest the state profited by from holding and using the property should be repaid as part of it. After alleging the suitability of a class action, plaintiff averred that the controller's retention of earnings and failure to pay the interest the state had saved were takings without just compensation, in

---

[1] The UPL previously provided for payment of interest on claims, but that allowance was eliminated in 2003. (Stats. 2003, ch. 228, § 8, eff. Aug. 11, 2003.)

[2] The UPL is part of a larger escheat law, title 10 of part 3 of the Code of Civil Procedure, which begins with section 1300. Its terms are applicable throughout the title.

violation of plaintiff's and the class's rights under the Fifth and Fourteenth Amendments to the United States Constitution, and article I, section 19 of the California Constitution. Plaintiff prayed for declaratory and "appropriate equitable and injunctive relief . . . ."

The parties stipulated and the court ordered that it would decide the question of liability before class certification, and then the appropriate remedy. Both sides moved for summary judgment (in plaintiff's case, "summary judgment as to liability"). Although the motions essentially presented legal questions, the controller submitted a declaration to the effect that the abandoned property account of the unclaimed property fund, into which unclaimed property is deposited, is not an interest-bearing account. In answers to interrogatories, filed by plaintiff, the controller stated that money in the general fund that is not immediately needed for expenditure is invested in a pooled money account, which does earn interest.[3]

The basic premise of plaintiff's motion for summary judgment was that the nonpermanent escheat of unclaimed property under the UPL transferred only custody, not title. Because title and ownership remained with owners like herself, plaintiff argued, the failure to compensate for use of the property, and the state's retention of such interest as the property earned while in its hands, constituted uncompensated and hence unconstitutional takings.[4] The controller's motion opposed plaintiff's contentions on several bases, including that the state held title to escheated unclaimed property until it was claimed, and that in those circumstances the original owners did not have a property interest requiring retention of, or compensation by, interest.

Ruling that plaintiff had not established a taking in the operation of the UPL, the trial court denied plaintiff's motion, granted the controller's, and entered judgment for the controller.

## DISCUSSION

■ Here as below, plaintiff's position depends upon the proposition that the UPL does not provide that the state holds title to nonpermanently escheated property. Section 1300, subdivision (c), however, refutes this claim. Once again, that subdivision defines escheat (as contrasted with permanent escheat) as "the vesting in the state of title to property . . . subject to the right of claimants to appear and claim the escheated property . . . ." Although the

---

[3] The controller also reported paying approximately 200,000 unclaimed property claims, on the order of $1,000 each, in each of four recent fiscal years.

[4] Although the complaint alleged that the property of some class members earned other incidents besides interest, plaintiff claimed only deprivation of interest. Our analysis will refer to interest, as the parties also generally do.

title so vested is defeasible, and meant to be temporary until a claim by the owner or other qualified claimant, it nonetheless exists.

There is no inconsistency between this reality and the legislative and judicial declarations that plaintiff relies on, which essentially distinguish between the status of property held under the UPL and property that has permanently escheated, granting absolute title to the state. Thus, section 1501.5, subdivision (a) provides that ". . . property received by the state under this chapter [UPL] shall not *permanently* escheat to the state." (Italics added.) The same distinction appears in the cases plaintiff cites, which refer to the state's taking custody rather than absolute ownership of unclaimed property. (*Fong v. Westly* (2004) 117 Cal.App.4th 841, 844 [12 Cal.Rptr.3d 76] (*Fong*); *Harris v. Westly, supra,* 116 Cal.App.4th at p. 219; *Bank of America v. Cory* (1985) 164 Cal.App.3d 66, 79 [210 Cal.Rptr. 351].)[5]

■ In short, nonpermanent title does reside in the state with respect to unclaimed property taken into custody under the UPL. The state's ability to utilize that title is strictly governed by the UPL, which provides for retention to pay owners' claims, and interim use in the general fund. But the state's title overcomes plaintiff's claims of entitlement to interest on the property, whether actually accrued or compensatory for the property's use. Before explaining how this is so, however, we respond to plaintiff's explicit and implicit claims that the statutory attribution of nonpermanent title to the state violates constitutional provisions.

■ First, plaintiff argues that escheat accomplished by statutory authorization, without notice and opportunity for a hearing, violates the requirements of due process. Assuming that permanent escheat requires such notice and hearing (see, e.g., *State v. Savings Union Bank & Trust Co* (1921) 186 Cal. 294, 299–300 [199 P. 26]), plaintiff's authorities do not show that the limited transfer at issue here does. Moreover, it has already been held that the UPL provides constitutionally sufficient notice to property owners. (*Fong, supra,* 117 Cal.App.4th at pp. 854–855.)

*Fong, supra,* 117 Cal.App.4th at pages 853–854, also rejected the contention, implicit in plaintiff's position, that the transfer of property by nonpermanent escheat under the UPL constituted an unconstitutional taking. In so holding, *Fong* relied on two federal cases, both of which again apply. *In re*

---

[5] Plaintiff contends that the controller should be judicially estopped by statements made in briefs in other cases, about the rights of owners not being divested under the UPL. Although we grant the request to judicially notice these briefs, they do not qualify for judicial estoppel, which requires, among other things, that the positions taken in the former and present cases "are totally inconsistent." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96].)

*Folding Carton Antitrust Litigation* (7th Cir. 1984) 744 F.2d 1252, 1255, stated that an "impermanent" escheat, which allowed recovery by claimants, "raise[d] no unconstitutional taking. Since any legitimate claimant has been afforded an adequate remedy against the United States, there is no bar to interim governmental use of the escheated money . . . ."

The second cited case was the Supreme Court's decision in *Texaco, Inc. v. Short* (1982) 454 U.S. 516 [70 L.Ed.2d 738, 102 S.Ct. 781] (*Texaco*). There the court approved, as against both due process and taking challenges, a statute that provided for the lapse and reversion to the surface owner of mineral interests that had not been used (in various ways) for 20 years, unless their owner recorded a claim before then. The court first explained that states had long been authorized to terminate or transfer property interests that had not been exercised and thus were considered abandoned. The court then held that the state could treat the mineral interests as abandoned, and the state did not have to compensate the owner for its neglect of them. "It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." (*Id.* at p. 530.)

Plaintiff avers that *Texaco, supra,* 454 U.S. 516, lacks relevance here, because it concerned transfer to another property owner, not the state. But Justice Brennan's dissent (on due process grounds), which plaintiff selectively quotes, made no distinction between state-mandated transfer of the mineral interests "to itself, to surface owners, or indeed to anyone at all . . . ." (*Id.* at p. 542.)

*Texaco, supra,* 454 U.S. 516, has been cited by several state appellate courts in upholding against takings challenges the denial to claimants of interest earned on unclaimed, state-held property. Those courts have treated unclaimed property as effectively abandoned, in the manner the *Texaco* court viewed the mineral interests under the challenged statute, with the consequence that neither custodial escheat of the property nor failure to pay the claimant interest on it constituted a taking. (*Smyth v. Carter* (Ind.Ct.App. 2006) 845 N.E.2d 219, 224; *Clark v. Strayhorn* (Tex.Ct.App. 2006) 184 S.W.3d 906, 913; *Smolow v. Hafer* (Pa.Cmwlth.Ct. 2005) 867 A.2d 767, 774–775; accord, *Sogg v. Ohio Dept. of Commerce* (Ohio Ct. App., June 21, 2007, No. 06AP-883) 2007 WL 1821306, app. accepted, Nov. 21, 2007, No. 2007-1452.) Here too, the intake and limited title transfer of property under the UPL are practically and legally attributable to the "abandonment" or inattention by the owners, in the face of conditions permitting them to avoid the result. Consequently, the title recognized by section 1300, subdivision (c) is not the product of an invalid taking.

■ Plaintiff contends, however, that property that meets the UPL's criteria as "unclaimed" may not be considered abandoned property, because that status traditionally requires a more stringent showing of intent to abandon. (See, e.g., *Gerhard v. Stephens* (1968) 68 Cal.2d 864, 889–890 [69 Cal.Rptr. 612, 442 P.2d 692].) But common law standards are not necessarily controlling. Just as the statute in *Texaco, supra,* 454 U.S. 516, set out a new set of criteria for relinquishment of certain property, which the Supreme Court treated as functionally abandoned, the UPL specifies property that nonpermanently escheats because of certain quanta of "abandonment." (See, e.g., §§ 1510–1520.) Under *Texaco,* the Legislature was entitled to do this, and the resulting temporary loss of ownership may properly be treated as the product of such abandonment, just as in states with similar laws unclaimed property is "presumed abandoned." (See *Smyth v. Carter, supra,* 845 N.E.2d at p. 222; *Clark v. Strayhorn, supra,* 184 S.W.3d at p. 910.)

■ Because title to plaintiff's property was legitimately vested in the state during the period in question, she was not entitled to the interest earned on it. ■ The UPL specifies that such interest shall be paid to the general fund. (§ 1562.) This directive does not violate the principle that interest "follows" and attaches to the principal on which it is earned (see, e.g., *Phillips v. Washington Legal Foundation* (1998) 524 U.S. 156, 165 [141 L.Ed.2d 174, 118 S.Ct. 1925]), because during the holding period the state has title to the principal property. For the same reason, retention of the interest earned by unclaimed property while held under the UPL does not constitute a taking of private property, as occurred in various cases on which plaintiff relies. (E.g., *Webb's Fabulous Pharmacies, Inc. v. Beckwith* (1980) 449 U.S. 155 [66 L.Ed.2d 358, 101 S.Ct. 446] [retention of interest earned by funds deposited in court in interpleader]; *Brown v. Legal Foundation of Wash.* (2003) 538 U.S. 216 [155 L.Ed.2d 376, 123 S.Ct. 1406] [appropriation of interest earned on pooled client funds (IOLTA)].)

Plaintiff's claim of entitlement to "constructive interest" for state use of the property when it did not generate interest also fails. The state being entitled to use property to which it has constitutionally assumed title, there exists neither a taking in such use nor a duty to compensate for it. Plaintiff's argument for "constructive interest" is based on a federal forfeiture case, which required the government to pay interest earned on money seized but ultimately returned to its owner. The case did not involve abandoned or unclaimed property, nor did its ruling derive from any constitutional mandate. (*U.S. v. $277,000 U.S. Currency* (9th Cir. 1995) 69 F.3d 1491, 1496.)

■ We conclude that the state's retention of interest earned on unclaimed property, to which it has temporary, nonpermanent title, does not constitute an unconstitutional taking without compensation.

### DISPOSITION

The judgment is affirmed. The controller shall recover costs on appeal.

Flier, J., and Egerton, J.,[*] concurred.

Appellant's petition for review by the Supreme Court was denied August 13, 2008, S165055.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.