[No. C042007. Third Dist. Mar. 11, 2004.]

BENNY FONG et al., Plaintiffs and Appellants, v.
STEVE WESTLY, as Controller, etc., Defendant and Respondent.

COUNSEL

Law Office of William W. Palmer, William W. Palmer; Law Office of Jeff Tochterman and Jeff Tochterman for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Louis Mauro, Assistant Attorney General, Catherine Van Aken, Leslie R. Lopez and Jonathan K. Renner, Deputy Attorneys General; Remcho, Johansen & Purcell, Robin B. Johansen and James C. Harrison for Defendant and Respondent.

OPINION

**NICHOLSON, J.**—Plaintiffs appeal from a judgment against their claims for monetary and equitable relief arising from the custodial escheat of stock shares they owned. We affirm.

STATUTORY BACKGROUND

Under the Unclaimed Property Law, certain types of unclaimed property escheats to the state. (Code Civ. Proc., § 1500 et seq.; all undesignated references to sections are to the Code of Civil Procedure.) The law has two objectives: (1) protect unknown property owners by locating them and restoring their property to them, and (2) give the state, rather than the owners of the unclaimed property, the benefits of holding the property, since experience shows most abandoned property will never be claimed. (*Bank of America v. Cory* (1985) 164 Cal.App.3d 66, 74 [210 Cal.Rptr. 351].)

The statute does not operate a true escheat. The law expressly provides title to property received by the state under its provisions does not pass to the state. (§ 1501.5.) The state holds the property as a custodian until the property's rightful owner can claim the property.

In general, the law declares certain personal property either located in the state or owned by a California resident escheats to the state when its owner fails to take enumerated steps during a period of time indicating continued active ownership, such as increasing or decreasing the amount on deposit, corresponding with the holder of the property, or otherwise indicating a continuing interest in the property. (See, e.g., § 1513.) Holders of such property must give property owners mailed notice of the pending escheat if the holder has the owner's address in its records. (§ 1513.5.)

If the owner fails to claim the property, the statute requires holders to make a verified report to the State Controller, identifying the property owner's name and last known address and describing the property. (§ 1530.) The holder files the report and, at the same time, transfers the property to the Controller. (§ 1532.)

The Controller then assumes custody of the property and is responsible for its safekeeping. (§ 1560.) Within one year after receiving the holder's report and the property described therein, the Controller must cause a notice to be published in a newspaper of general circulation to inform property owners of the escheat. (§ 1531.)

The Controller in general sells all escheated property to the highest bidder, except that with regards to securities traded on an established exchange, the Controller sells the securities within two years of its receipt on that exchange at the prevailing prices. (§ 1563.) The Controller is required to publish one-week's prior notice of any sale, except that no notice is required for a sale of securities on a national exchange. (*Ibid.*)

Any person who claims an interest in property escheated to the state may file a claim "to the property or to the net proceeds from its sale." (§ 1540, subd. (a).) If the Controller grants the claim, the Controller returns the property or the proceeds from its sale to the claimant, along with a payment of interest at a specified rate. (Former § 1540, subd. (c); Stats. 1998, ch. 1029, § 1.)

## FACTS

This matter proceeded to trial on the following stipulated facts:

Plaintiff Benny Fong has been a resident of Rancho Palos Verdes, Los Angeles County, since approximately 1958. He owned Hilltop Food Center in Los Angeles from the 1960's until he sold it in 1986. In 1967, Hilltop Food Center entered into an agreement with the Blue Chip Stamp Company (Blue Chip) to participate in that company's stamp giveaway program. Under that

agreement, Hilltop Food Center obtained shares of stock in Blue Chip. Hilltop Food Center stopped participating in Blue Chip's stamp program in the early 1970's.

Plaintiff William Quiroz resided in La Habra, Orange County, from 1969 to 1990. Since 1990, he has resided in Murietta, Riverside County. Quiroz owned Willie's Meats in Los Angeles from 1961 to approximately 1978. Willie's Meats began participating in Blue Chip's stamp program in the early 1960's, and obtained shares in Blue Chip as a result. The shares were held in the name of Willie's Meats.

Plaintiffs Sarah and Angelo Terracina resided in Sherman Oaks, Los Angeles County, until 1978, when they relocated to Peoria, Arizona. During the 1960's and early 1970's, Sarah Terracina was employed at the Blue Chip Stamps retail center. Through her employment, she and her husband came to own shares of Blue Chip.

All plaintiffs lost contact with Blue Chip in the mid-1970's.

In 1983, Berkshire Hathaway, Inc., a company incorporated in the State of Nebraska, acquired Blue Chip. As a result of that acquisition, Blue Chip stock was converted to Berkshire Hathaway stock at a ratio of 1 to 0.077. Blue Chip advised its shareholders of the acquisition.

On October 31, 1988, Berkshire Hathaway filed a holder's report with the State of Nebraska identifying the owners of Berkshire Hathaway stock and the owners' last known addresses. The list named Hilltop Food Center, Willie's Meats and the Terracinas as shareholders. The report listed Hilltop Food Center's address in Los Angeles, Quiroz's address in La Habra, and the Terracina's former address in Sherman Oaks, but did not include Social Security numbers.

Plaintiffs' stock in Berkshire Hathaway escheated to the State of Nebraska under Nebraska law.

In May 1989, pursuant to a reciprocity agreement between Nebraska and California, defendant, the California State Controller (then Gray Davis), received a block of 132 escheated Berkshire Hathaway shares, including those owned by plaintiffs. The Nebraska report accompanying the transferred shares identified Hilltop Food Center, Willie's Meats, and the Terracinas as owners and listed their addresses as those that had been submitted earlier to Nebraska by Berkshire Hathaway.

In the report, each shareholder had been assigned an account number ranging from 549115 through 5491160. Some of the accounts listed on the

report did not fully balance with the number of shares received by the Controller. Under standard procedures, the Controller established an aggregate account, account No. 5491161, for unaccounted stocks and dividends.

Subsequently, the Controller identified all of the accounts attributable to the Nebraska report. It established two additional stock accounts, Nos. 9720086 and 9720087, and transferred them from the aggregate account. Account No. 9720086 became the Terracina account, and No. 9720087 became the Hilltop Food Center account. The Willie's Meats account had already been assigned No. 5491160.

In June 1990, the Controller sold a block of the escheated Berkshire Hathaway stock at a price of $7,082 per share. All of the plaintiffs' shares were sold in this block at that price.

In 1999, a third party contacted plaintiffs to assist them in pursuing a claim for the recovery of property from the Controller's office. That year, each plaintiff filed claims with the Controller for the recovery of property pursuant to section 1540.

By March 2000, the Controller had determined plaintiffs owned the respective shares of stock discussed above. The Controller issued checks to plaintiffs in the following amounts: to Fong, $170,994.87 as payment for 15 shares of Berkshire Hathaway stock, plus interest; to Quiroz, $12,378.71 as payment for one share of Berkshire Hathaway stock, plus interest; and to the Terracinas, $11,398.37 as payment for one share of Berkshire Hathaway stock, plus interest. All amounts were based on the price the Controller received for the shares when he sold them in 1990.

None of the plaintiffs filed government tort claims with the state Victim Compensation and Government Claims Board.

We will provide additional facts as necessary.

## PROCEDURAL HISTORY

### 1. *Plaintiffs' complaints.*

All plaintiffs filed separate complaints against the Controller. Fong's fourth amended complaint, filed on May 31, 2001, alleged his shares at the time of filing would have been worth roughly $70,000 per share (down from a 24-month high of $90,000 per share). He alleged the Controller had sold other blocks of the escheated shares at other times for between $31,000 and

$33,000 per share. He asserted the Controller's taking possession of, and sale of his shares (at approximately $7,000 per share) without notice to him or obtaining his consent, and before knowing the identity of the owners of those shares, violated: (1) his due process rights of notice and compensation for property under the state and federal Constitutions; (2) undesignated state and federal securities laws; and (3) notice and qualifying provisions of the Unclaimed Property Law.

He sought declaratory and injunctive relief on those grounds and also a declaration that he was entitled to the return of either his stock investment or the reasonable value thereof, an accounting and imposition of a constructive trust, and attorney fees and the creation of a common fund consisting of all monies received by the Controller from the improper acquisition and sale of stock without due process to be refunded to all similarly injured shareholders.

Quiroz and the Terracinas filed first amended complaints seeking recovery of compensatory damages from the Controller. They alleged the Controller improperly reimbursed them the value of their shares based on the sales price in 1990 when the Controller did not at that time know the rightful owners of the shares sold. They sought to be paid the sale price earned by the Controller when the Controller allegedly sold another block of the escheated Berkshire Hathaway shares in 1995 at a significantly higher price.

The trial court subsequently consolidated the three actions. It also denied motions by plaintiffs to amend their complaints to include class action allegations.

2. *Fong's motion for summary judgment/summary adjudication.*

Fong filed a motion for summary judgment or summary adjudication. He argued undisputed facts demonstrated the Controller had failed to provide him notice either by mail or by publication of the Controller's receipt or sale of his shares of stock. He asserted this failure violated the requirements of the Unclaimed Property Law and his constitutional rights to due process.

The trial court (Kobayashi, J.) denied Fong's motion. Fong had not submitted undisputed facts proving Hilltop Food Center had never received notice of the escheat. Also, the court acknowledged under section 1563, subdivision (b), the sale of escheated shares of securities listed on an established stock exchange was exempt from a publication notice requirement. "The explicit statutory exemption would be applicable here, thus notice was not required."

### 3. *Controller's motion for summary judgment/summary adjudication.*

The Controller then filed a motion for summary judgment or summary adjudication. He argued sections 1566 and 1541 granted the Controller complete immunity against any action brought by a person aggrieved by a decision of the Controller seeking to recover anything other than the property or its sale proceeds. Section 1540 limited any recovery to recovering either the escheated property itself or the net proceeds from its sale, which plaintiffs had already received. He sought summary judgment on this basis.

The Controller sought summary adjudication on five other issues in the event the court determined he did not enjoy complete immunity under section 1566. First, he claimed he had no duty under the Unclaimed Property Law to give notice prior to selling plaintiffs' shares. Second, he argued his sale of the shares did not violate plaintiffs' due process rights. The sale did not constitute a taking nor did it trigger a requirement to give notice prior to selling the stock.

Third, the Controller asserted the Unclaimed Property Law did not impose on him a duty to verify independently the information submitted to California in the holder's report regarding the identity of shareholders the issuing company could no longer locate. Fourth, he claimed his sale of the shares did not violate state or federal securities laws. And, fifth, he argued if the court held plaintiffs could seek damages against the Controller, plaintiffs' actions in this instance were barred by the requirements of the Tort Claims Act.[1]

The trial court (McMaster, J.) denied the Controller's motion for summary judgment, but granted summary adjudication on certain issues. On summary judgment, the court acknowledged section 1566 granted the Controller immunity, but determined section 1541's exception to that grant allowed an action to be brought by a person aggrieved by any decision of the Controller's, not just an action to establish a claim to property the Controller held.

The court granted summary adjudication on the Controller's second, third, and fourth issues. On the second issue, the court concluded the Controller had no constitutional duty to notify plaintiffs prior to selling their stock, and it concluded the sale of the stock without prior notice did not deprive plaintiffs of property without due process.

On the third issue, the court held the Controller had no duty to verify the information contained in the holder's report received from Nebraska. The

---

[1] Fong filed a cross-motion for summary judgment, raising essentially the same arguments he raised in his earlier motion. The trial court denied Fong's cross-motion.

Controller was entitled to rely on the fact the property had escheated under Nebraska law, which required the holder's report be verified by the issuing organization under penalty of perjury.

On the fourth issue, the court granted summary adjudication against plaintiffs' claims of violations of state and federal securities laws.

The court denied summary adjudication on the Controller's first and fifth issues. First, it denied a ruling on the Controller's claim he had no duty to notify plaintiffs of the sale of their stock under the Unclaimed Property Law. While the Controller might not have had to give notice prior to *selling* the shares, the trial court stated section 1531 of the Unclaimed Property Law required him to give notice of his *receipt* of the shares. Insufficient evidence existed by which the court could determine whether the Controller complied with section 1531 or whether the Controller was excused from compliance because the State of Nebraska gave notice of the escheat but failed to provide the Controller with plaintiffs' names and other identifying information.

Second, the court denied summary adjudication on the Controller's argument that plaintiffs' claims for damages were barred by the Tort Claims Act. Adjudicating this issue would not completely dispose of a substantive area of plaintiffs' actions, as they had requested declaratory and injunctive relief as well as damages.

4. *Controller's motions in limine and trial.*

The action proceeded to trial before Judge David W. Abbott on the stipulated facts recited above. The Controller filed a number of in limine motions, two of which became dispositive of the action. The first sought to exclude evidence of the Controller's alleged failure to give notice of the sale to plaintiffs. The Controller argued such evidence was irrelevant because even if the Controller had failed to give notice, he was immune from suit under section 1566.

The second sought to exclude evidence relating to damages suffered by plaintiffs on the ground the Tort Claims Act barred plaintiffs from recovering damages.

The court granted both motions. The court also deemed admitted the fact Fong could not have received any mailed notice sent to the Hilltop Food Center on or after May 3, 1989, the day the Controller received Hilltop's shares from Nebraska.

As a result of its rulings, the court determined plaintiffs were not entitled to declaratory or injunctive relief. Since they had already received their sole

remedy of the shares' proceeds plus interest, plaintiffs agreed no other issues in their case remained to be tried. The court entered judgment against plaintiffs.

## DISCUSSION

Plaintiffs allege the trial court erred by: (1) determining the Controller was immune from liability for violations of the Unclaimed Property Act's noticing requirements as well as constitutional due process requirements; (2) determining plaintiffs were barred from seeking damages due to their failure to file a claim under the Tort Claims Act; and (3) hearing the Controller's in limine motions which were identical to his earlier denied motion for summary judgment and summary adjudication and were raised without any newly discovered facts.

■ Because the issues we discuss are each questions of law, we review the arguments de novo. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 544 [35 Cal.Rptr.2d 574].)

I

*Immunity under* Section 1566

Plaintiffs argue the trial court erred by determining the Controller was immune under section 1566 for damages caused by the Controller's alleged violations of the Unclaimed Property Law's noticing requirements. We disagree.

Section 1566 reads in full: "(a) When payment or delivery of money or other property has been made to any claimant under the provisions of this chapter, no suit shall thereafter be maintained by any other claimant against the state or any officer or employee thereof for or on account of such property.

"(b) Except as provided in Section 1541, no suit shall be maintained by any person against the state or any officer or employee thereof for or on account of any transaction entered into by the State Controller pursuant to this chapter."

■ Plaintiffs claim the immunity provided under section 1566, subdivision (b) applies only when money or property has been delivered to a "claimant under the provisions of this chapter," as written in section 1566, subdivision (a). This reading is not supported by the statute's language. Section 1566, subdivision (a) is not a condition precedent to the operation of subdivision (b), nor are the two subdivisions

interdependent. Subdivision (a) applies when a third party asserts entitlement to escheated property the Controller has already delivered to a claimant. This is not that case.

■ The plain language of section 1566, subdivision (b), regardless of the operation of section 1566, ubdivision (a), immunizes the Controller from a legal action arising from a "transaction" entered into by the Controller under authority of the Unclaimed Property Law. This is such a case. Plaintiffs' actions arise primarily from the Controller's sale of their escheated shares under authority of the Unclaimed Property Law. They thus cannot sue the Controller for damages allegedly suffered from this transaction except as allowed in section 1541.

Former section 1541 stated in full: "Any person aggrieved by a decision of the State Controller or as to whose claim the Controller has failed to make a decision within 90 days after the filing of the claim, may commence an action, naming the State Controller as a defendant, to establish his claim in the superior court in any county or city and county in which the Attorney General has an office. The action shall be brought within 90 days after the decision of the State Controller or within 180 days from the filing of the claim if the State Controller fails to make a decision. The summons and a copy of the complaint shall be served upon the State Controller and the Attorney General and the State Controller shall have 60 days within which to respond by answer. The action shall be tried without a jury." (Stats. 1978, ch. 1183, § 21, p. 3831.)

Section 1541, in fact, is the provision by which plaintiffs obtained the proceeds from their stock. This was the remedy provided for plaintiffs to recover on their investments, and they have received the full amount allowed under the law.

Plaintiffs claim even if the Controller has immunity under section 1566, subdivision (b), each of their actions still qualify under former section 1541 as a claim by a "person aggrieved by a decision of the State Controller." (Stats. 1978, ch. 1183, § 21, p. 3831.) To read section 1541 as plaintiffs suggest ignores the statute's relation to the preceding statute, section 1540. Former section 1540 provided: "(a) Any person, excluding another state, who claims an interest in property paid or delivered to the Controller under this chapter may file a claim to the property or to the net proceeds from its sale. The claim shall be on a form prescribed by the Controller and shall be verified by the claimant.

"(b) The Controller shall consider each claim within 90 days after it is filed and may hold a hearing and receive evidence. The Controller shall give written notice to the claimant if he or she denies the claim in whole or in part . . . ." (Stats. 1998, ch. 1029, § 1.)

■ Read in context, section 1541 refers to the claim filed under section 1540. If the claimant disagrees with the Controller's decision on the claim, or if the Controller has failed to make a decision within 90 days as required by section 1540, the claimant under former section 1541 "may commence an action, naming the State Controller as a defendant, to establish his claim . . . ." (Stats. 1978, ch. 1183, § 21, p. 3831.) To read section 1541 as authorizing an action to challenge any decision of the Controller would swallow the immunity provided under section 1566 whole. ■ Our task is to harmonize the statutory scheme, not render portions of it superfluous.

To the extent plaintiffs sought money or damages for harm that was not "for or on account of any transaction entered into by the State Controller," their actions were also barred due to their failure to file claims under the Tort Claims Act with the Victim Compensation and Government Claims Board. (Gov. Code, § 945.4.) The trial court thus correctly determined any evidence tending to prove violations of the Unclaimed Property Law's noticing provisions was irrelevant.

## II

### *Due Process*

Plaintiffs argue the trial court extended section 1566's immunity to alleged violations by the Controller of their due process rights. The trial court did not so rule. On the Controller's earlier motion for summary judgment, the trial court determined the Controller had not violated plaintiffs' due process rights. Thus, that claim was no longer at issue as trial began.

Before us, however, plaintiffs also challenge the trial court's summary adjudication against their due process claims. They assert the Controller's alleged failure to notify them upon his receipt of their shares and prior to selling their shares constituted an uncompensated taking of property and a violation of procedural due process rights. We disagree.

■ First, the escheat did not constitute a taking. Under the Unclaimed Property Law, property received by the state cannot permanently escheat to the state. (§ 1501.5.) No unconstitutional taking occurs where a state exercises its right to take custody of abandoned property, as opposed to taking absolute title. (See *In re Folding Carton Antitrust Litigation* (7th Cir. 1984) 744 F.2d 1252, 1255 [custodial escheat under federal statute raises no unconstitutional taking].) Indeed, where an owner's interest in property is transferred to another pursuant to a statute and due to the original owner's abandonment, the Supreme Court "has never required the State to compensate

the owner for the consequences of his own neglect." (*Texaco, Inc. v. Short* (1982) 454 U.S. 516, 530 [70 L.Ed.2d 738, 751, 102 S.Ct. 781].)

■   Second, due process did not require the Controller to give notice to plaintiffs under these circumstances beyond what plaintiffs had already received constructively. "In altering substantive rights through enactment of rules of general applicability, a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements. *Texaco [Inc. v. Short, supra]* 454 U.S. at 532; see also *Anderson National Bank v. Luckett* (1944) 321 U.S. 233, 243 [88 L.Ed. 692, 64 S.Ct. 599]; *North Laramie Land Co. v. Hoffman* (1925) 268 U.S. 276, 283 [69 L.Ed. 953, 45 S.Ct. 491]." (*United States v. Locke* (1985) 471 U.S. 84, 108 [85 L.Ed.2d 64, 84–85, 105 S.Ct. 1785].)

At all relevant times, the Unclaimed Property Law put plaintiffs on notice their intangible interest in Berkshire Hathaway would escheat to the state if, for a period of over five years, they neither claimed a dividend nor corresponded with the corporation, and the corporation did not know their location. (Former § 1516; Stats. 1988, ch. 286, § 6, p. 987.) It also informed the plaintiffs if their shares were escheated to the state, the Controller was required to sell the shares at prevailing prices on the exchange where the stock was listed, and to do so without further notice to the share's original owners. (Former § 1563; Stats. 1972, ch. 1165, § 1, pp. 2290–2291.)

The provisions of Nebraska law where the stock was actually escheated must also be recognized. In 1988, when Berkshire Hathaway filed its holder's report with that state, Nebraska law required holders to "exercise due diligence to ascertain the whereabouts of the owner" and to "take necessary steps to prevent abandonment from being presumed" before filing their reports. (Neb. Rev. Stat. § 69-1310(e) (1989).)

Nebraska law also required its state treasurer to publish the names and last known addresses of owners of unclaimed property, and to mail a notice of the escheat to such owners at the addresses listed in the holder's report within 120 days of receiving a holder's report. (Neb. Rev. Stat. § 69-1311(a), (d) (1989).) The trial court correctly presumed Berkshire Hathaway and the Nebraska treasurer complied with these obligations. (Evid. Code, § 664.)

Plaintiffs thus received constructive notice under these provisions as well. These notices, along with the notice provided by the Unclaimed Property Law, satisfied the demands of due process.

Relying on *Standard Oil Co. v. New Jersey* (1951) 341 U.S 428 [95 L.Ed. 1078, 71 S.Ct. 822], plaintiffs argue due process required they receive mailed and published notice by the Controller upon both his receipt of their shares from Nebraska and prior to him selling their shares. *Standard Oil* is distinguishable. That case concerned a judicial procedure by which the state took permanent title to the abandoned property following a noticed hearing and entry of judgment. Even in those adjudicative circumstances, the Supreme Court determined notice by publication, as authorized by the relevant statute, was constitutionally adequate. (341 U.S. at pp. 432–435.)

Here, the state did not take title to plaintiffs' shares, but only held them as custodian. Moreover, the Nebraska state treasurer notified plaintiffs by mail to their last known address of record of the escheat, and the Unclaimed Property Law notified them their property would escheat automatically without a court hearing and would be sold without further notice. *Standard Oil* does not address these circumstances.

Plaintiffs argue the Controller's alleged violations of the Unclaimed Property Law's noticing requirements also violated their due process rights. We have already determined what process was due. That the Legislature imposed additional noticing requirements on the Controller beyond the requirements of due process does not alter our due process analysis. (See *Jones v. United States* (9th Cir. 1997) 121 F.3d 1327, 1332.)

The undisputed facts demonstrate plaintiffs received all notice constitutionally due them. The trial court correctly granted summary adjudication against them on their due process claims.

Our determinations moot plaintiffs' remaining arguments.[2]

---

[2] Plaintiffs ask us to take judicial notice of certain actions allegedly taken by the Controller in response to the Legislature's recent elimination of the requirement imposed on the state to pay interest on claims made for unclaimed property. (Stats. 2003, ch. 228, § 8.) Plaintiffs argue the Controller's actions represent the "decisional" law of the state of which we must take judicial notice. (Evid. Code, § 451, subd. (a).) We disagree and deny the request. We also deny as moot plaintiffs' motion to file a reply in response to the Controller's opposition to plaintiffs' initial request.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Morrison, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 23, 2004.