# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00212-CV

**Charles H. Clark and Elizabeth Hajek, Individually, and on behalf of all other persons similarly situated, Appellants**

**v.**

**Carole Keeton Strayhorn, Comptroller of Public Accounts, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. GN300872, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

Appellants Charles H. Clark and Elizabeth Hajek (collectively, Clark) filed suit in Travis County alleging that the Comptroller's failure to pay interest when returning unclaimed property was an unconstitutional taking. *See* U.S. Const. amend. V; Tex. Const. art. I, §§ 17, 19; Tex. Prop. Code Ann. §§ 72.001- 74.710 (West 1995 & West Supp. 2005) (Unclaimed Property Act). Clark moved to certify a class including all persons who had received payment for a claim exceeding $100 under the unclaimed property act. After a hearing on certification and the viability of Clark's claims, the district court denied the motion to certify the class and dismissed the suit. Clark appeals and asks this Court to certify the class and remand the case for further proceedings. Because the payment of interest to owners of unclaimed property is not required by statute or the constitution, we affirm the district court's judgment.

**PROCEDURAL POSTURE**

Before reaching the merits of Clark's appeal, we must first review the procedure underlying the district court's judgment. Clark initially obtained a favorable ruling on summary judgment. District Judge Patrick Keel denied the Comptroller's motion for summary judgment[1] and granted partial summary judgment holding that the Comptroller's retention of any interest earned on unclaimed property would be an unconstitutional taking. Later, District Judge Gisela Triana[2] denied the Comptroller's motion for rehearing of its motion for summary judgment, and the case proceeded to a hearing on the issue of class certification before District Judge Scott Jenkins.

At the class certification hearing, the district court heard expert testimony regarding the class certification requirements. The hearing then turned to the question of whether the State had actually earned interest on unclaimed property as alleged by Clark. In response to an open records request, the Comptroller had initially reported earning millions of dollars of interest on unclaimed property. This report had been corrected in writing before the hearing, and witnesses for the Comptroller testified that no interest had been earned because unclaimed property is deposited into

---

[1] In its motion for summary judgment, the Comptroller argued that Clark was not entitled to relief as a matter of law. The Comptroller's motion explained that the unclaimed property act did not provide for interest to be paid to owners, that the State's use of unclaimed property was not an unconstitutional taking, and that the reasoning in cases dealing with interpleader and IOLTA funds did not apply to the State's use of unclaimed property.

[2] Aspects of this case were heard by several judges because the district courts of Travis County have established a central settings docket in which causes are not assigned to a particular judge. Travis (Tex.) Civ. Dist. Ct. Loc. R. 1.1. Although the rules allow assignment to an individual judge on the suggestion of any judge or after conference with the parties, it was not done in this case. *See id*. 2.6.

an account that has a negative balance. The Comptroller asserts that the money is spent the moment it is received.

Without resolving the fact dispute on interest, Judge Jenkins acknowledged the prior partial summary judgment, but explained that he was compelled to revisit the issue:

> I've never been in a situation where we've already had partial summary judgments on a prospective class action. And again, I said at the outset that this is a classic case for a Rule 2.6 under our local rules, assignment to a particular judge. It's just one of those things that didn't happen and now we've had three judges touch it.

> But I'm in the position where I'm going to—before I amplify this ruling to somewhere in the neighborhood of 200,000 Texans prospectively, *I'm going to scrutinize the summary judgment*. And if I conclude that it's not a viable claim, notwithstanding that ruling being the ruling in the plaintiffs' case here, then I'm going to decline to grant the class certification.

(Emphasis added.) Citing the recent supreme court opinion in *State Farm Mutual Automobile Insurance Co. v. Lopez*, 156 S.W.3d 550, 557 (Tex. 2004), Judge Jenkins issued a case dispositive order stating that the court "tried the issue of whether a class member can state a viable takings claim, *before* considering a ruling on the issue of class certification." (Emphasis added.) In his order, Judge Jenkins determined that Clark had not asserted a viable takings claim, denied the motion to certify the class, and dismissed Clark's suit.

In *Lopez*, the supreme court held that "dispositive issues should be resolved by the trial court before certification is considered." *Id*. *Lopez* could not and did not create a new procedural device for making a case dispositive ruling in the context of a class certification hearing. "Deciding the merits of the suit in order to determine the scope of the class or its maintainability as a class action is not appropriate." *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 404 (Tex. 2000).

3

"Viability" is not a requirement for class certification under Rule 42. *See* Tex. R. Civ. P. 42. The cited language from *Lopez* simply emphasizes that case dispositive issues, such as might be raised by special exception or a motion for summary judgment, should be resolved before a court considers the question of class certification under Rule 42. *See Lopez*, 156 S.W.3d at 556-57 (admonishing trial courts not to "certify now and worry later"). It is clear from the district court's dispositive order that Judge Jenkins understood the basic holding of *Lopez* and that he was reconsidering the prior rulings on the State's motion for summary judgment before ruling on class certification.[3] *See Fruehauf Corp. v. Carillo*, 848 S.W.2d 83, 84 (Tex. 1993) (trial court has power to set aside interlocutory orders any time before final judgment entered); *Loy v. Harter*, 128 S.W.3d 397, 409 (Tex. App.—Texarkana 2004, pet. denied) (trial court has inherent authority to reconsider partial summary judgment at any time until plenary power expires). Accordingly, the district court's order dismissing Clark's case is properly construed as a summary judgment in favor of the State, and Clark's appeal is from that summary judgment.

## DISCUSSION

Clark's challenge to the district court's summary judgment is premised on his interpretation that the statute requires the Comptroller to pay interest on unclaimed property in her possession. Clark argues that the statute is constitutional and that the Comptroller's failure to pay

---

[3] Although the order incorrectly recites that "the requirements of Rule 42 of the Texas Rules of Civil Procedure have not been met because no class member is able to state a viable takings claim," Judge Jenkins's comments in the record and the case-dispositive nature of the order demonstrate that the court's ruling was based on the State's summary judgment motions and not the class certification requirements.

4

interest on returned unclaimed property both violates the statute and amounts to an unconstitutional taking. *See* U.S. Const. amend. V; Tex. Const. art. I, §§ 17, 19. Citing specific language in the statute that requires the Comptroller to invest unclaimed property and keep it safe, Clark asserts that the legislature intended that the Comptroller hold unclaimed property in trust and pay interest to owners. *See* Tex. Prop. Code Ann. §§ 74.304(a), .601. To support this assertion, Clark relies on the custodial nature of the statute. Thus, Clark compares the Comptroller's possession of unclaimed property to other contexts in which courts have found that interest is owed when the State holds private property.

We hold that there is no unconstitutional taking of interest on property that is presumed abandoned. Viewed as a whole, the statute does not establish a trust relationship between the Comptroller and the original owner of unclaimed property. Rather, the unclaimed property act creates a mechanism for individuals to reclaim their lost property but empowers the Comptroller to use abandoned property for the benefit of the State until a claim of ownership has been asserted.

**The Unclaimed Property Act**

Under the unclaimed property act, personal property is presumed abandoned if, for longer than three years, (1) the existence and location of the owner is unknown to the holder of the property and (2) a claim to the property has not been asserted or an act of ownership has not been exercised.[4] *Id*. § 72.101. Holders of property presumed abandoned are required to deliver that

---

[4] Special provisions apply to unclaimed wages, stored value cards, traveler's checks, and money orders. *See* Tex. Prop. Code Ann. §§ 72.1015, .1016, .102 (West Supp. 2005).

5

property to the Comptroller. *Id.* § 74.301. A holder who fails to deliver property within the prescribed time must pay penalties and interest to the Comptroller. *Id.* §§ 74.705, .706.

The statute requires the Comptroller to keep a record of all property received and to deposit the property in the "general revenue fund." *Id.* § 74.601(a), (b). The statute anticipates that the Comptroller will invest the property:

(d) Except as provided by Subsection (e), the comptroller shall from time to time invest the amount of unclaimed money in investments approved by law for the investment of state funds.

(e) The comptroller may from time to time sell securities, including stocks, bonds, and mutual funds, received under this chapter or any other statute requiring the delivery of unclaimed property to the comptroller and use the proceeds to buy, exchange, invest, or reinvest in marketable securities. When making or selling the investments, the comptroller shall exercise the judgment and care of a prudent person.

*Id.* § 74.601 (d), (e).

The unclaimed property act contains detailed provisions requiring the Comptroller to give notice to property owners of their right to recover unclaimed property in the Comptroller's possession. *Id.* §§ 74.201-.205. A list of all owners must be compiled and made available to the public. *Id.* § 74.307.

The statute sets forth procedures through which an owner may reclaim property by filing a claim with either the Comptroller or the original holder of the property. *Id.* §§ 74.501, .502 (claim filed with Comptroller), 76.501-.505 (claim filed with holder). The Comptroller may hold a hearing to determine the validity of a claim. *Id.* § 74.504. That determination, or the

6

Comptroller's failure to make a timely decision, may be appealed by filing suit against the State in district court in Travis County. *Id*. § 74.506.

**Statutory Construction**

The unclaimed property act does not contain any provision directing the Comptroller to pay interest to owners. Clark asserts that the statute implies a trust relationship between the State and owners that creates a duty to pay interest. We will examine Clark's construction of the statute in light of its plain language. *See Texas Nat. Res. Conservation Comm'n v. Lakeshore Util. Co., Inc.*, 164 S.W.3d 368, 378 (Tex. 2005) (we ascertain and give effect to legislature's intent by looking at plain language of statute). We derive the legislature's intent by reading the entire act, not a single section in isolation. *See id*.; *Fitzgerald v. Advanced Spine Fixation Sys*., 996 S.W.2d 864, 866 (Tex.1999).

Clark's contention that unclaimed property is held in trust for owners and that interest must be paid rests primarily on two provisions in the statute. First, "the state shall assume custody of the property and responsibility for its safekeeping." Tex. Prop. Code Ann. § 74.304(a). Section 74.601 also instructs the Comptroller to "from time to time invest" the unclaimed property, and when making such investments, "exercise the judgment and care of a prudent person." *Id*. § 74.601(d), (e). We agree that these provisions confirm the custodial nature of the statute, but conclude that the Comptroller is directed to invest the unclaimed property for the benefit of the State, not the owners.

Escheat statutes like the unclaimed property act can be either absolute or custodial in nature. *See Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n*, 74 S.W.3d 377, 382 (Tex. 2002). Under absolute escheat statutes, title passes to the State. *Id*.

7

"Custodial statutes, by contrast, do not divest the 'true owner' of title and instead serve the dual purposes of reuniting owners with unclaimed funds or property and giving the state, rather than the holder, the benefit of the use of the unclaimed funds or property pending reclamation." *Texas Workers' Comp. Comm'n v. Texas Mun. League Intergovernmental Risk Pool*, 38 S.W.3d 591, 597-98 (Tex. App.—Austin 2000), *aff'd*, 74 S.W.3d 377 (Tex. 2002) (citing 30A C.J.S. *Escheat* § 2(b)). In fact, it is widely accepted that unclaimed property statutes that are custodial in nature are intended to allow use of the property to generate revenue for the State until the property is claimed by the owner. *See*, *e.g.*, *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 872 (7th Cir. 1999) (unclaimed property is "an interest free loan to the state—in perpetuity if the owner never shows up to claim it"); *Louisiana Health & Indem. Co. v. Tarver*, 635 So.2d 1090, 1092 (La. 1994) (custodial escheat statute serves two purposes—to raise revenue for state and safeguard unclaimed property); *Fong v. Westley*, 117 Cal. App. 4th 841, 844 (Cal. Ct. App. 2004); 1 David J. Epstein, Unclaimed Property Law and Reporting Forms § 1.07; K. Reed Mayo, *Virginia's Acquisition of Unclaimed and Abandoned Property*, 27 Wm. & Mary L. Rev. 409, 420 (1986) (uniform unclaimed property act provides states method for raising revenue).

Clark relies on a recent opinion of the Ninth Circuit Court of Appeals to assert that unclaimed property must be held "in trust." *Taylor v. Westley*, 402 F.3d 924, 931 (9th Cir. 2005). The Ninth Circuit explained that the use of "traditional trust language" in the California statute established a custodial trust:

> The care and custody of all property delivered to the Treasurer or Controller pursuant to this title is assumed by the State for the benefit of those entitled thereto . . .

8

*Id*. (quoting Cal. Civ. Proc. Code § 1361). Clark argues that Texas's unclaimed property act creates a similar trust relationship by stating "the state shall assume custody of the property and responsibility for its safekeeping." Tex. Prop. Code Ann. § 74.304(a). This comparison disregards a key difference between California and Texas's unclaimed property acts. The California statute requires that all funds received be deposited in a separate "trust fund for the interests of all parties having an interest in the property." *Taylor*, 402 F.3d at 930 (citing Cal. Civ. Proc. Code § 1313). The court held that this provision created a custodial trust: "[T]o the extent that the funds remained in the state's special account, they were being held in trust, rather than being in the state treasury." *Id*. at 931.[5] By contrast, the Texas statute directs that unclaimed property be deposited in the State's general revenue fund, not in a separate trust fund for owners. *See* Tex. Prop. Code Ann. § 74.601(b). We hold that the *Taylor* opinion, relying as it does on the statutory creation of a separate trust fund for owners, does not control our interpretation of the Texas act which has no such provision for a custodial trust.

The only trust language in the Texas act is found in section 74.708, "Property Held in Trust," and it establishes a trust relationship between the State and holders who fail to deliver unclaimed property to the State:

> A holder who on June 30 holds property presumed abandoned under Chapters 72-75 holds the property in trust for the benefit of the state on behalf of the missing owner and is liable to the state for the full value of the property, plus any accrued interest and penalty. A holder is not required by this section to segregate or establish trust

---

[5] Similarly, the supreme court of Oklahoma held that unclaimed property is held "in trust" when the Oklahoma statute required such property to be placed in a separate "Unclaimed Property Fund." *TXO Prod. Corp. v. Oklahoma Corp. Comm'n*, 829 P.2d 964, 971-72 (Okla. 1992).

accounts for the property provided the property is timely delivered to the comptroller in accordance with section 74.301.

*Id*. This section also makes clear that the property is held in trust for the benefit of the State, not for the benefit of the owner. The legislature addressed when property should be held in trust and failed to create a trust relationship between the State and the owner of unclaimed property.

Conspicuously, the legislature not only avoided creating such a trust relationship, but greatly limited the Comptroller's liability to the owner of unclaimed property:

> The comptroller is not, in the absence of negligence or mishandling of the property, liable to the person who claims the property for damages incurred while the property or the proceeds from the sale of the property are in the comptroller's possession. But in any event the liability of the state is limited to the extent of the property delivered under this chapter and remaining in the possession of the comptroller at the time a suit is filed.

*Id*. § 74.304(d).[6] This provision limits the Comptroller's liability, regardless of any malfeasance, to the amount of the property still in the Comptroller's possession. Such a limitation is inconsistent with a trust relationship.

As noted, the statute contains no specific directive that the Comptroller pay interest to owners of unclaimed property. *Compare id*. § 74.501 (b), *with id*. § 74.705 (holder who fails to

---

[6] Clark attempts to limit this provision to property that has been physically damaged while in the Comptroller's custody. However, the plain language does not support such a limitation. The statute refers to "damages incurred while the property *or the proceeds from the sale of the property* are in the comptroller's possession." Tex. Prop. Code Ann. § 74.304(d) (West Supp. 2005) (emphasis added). The legislature would not have mentioned the proceeds from the sale of property, presumably cash, if it meant to limit liability only for physical damage to property.

10

deliver unclaimed property to State must pay interest).  Viewing the statute as a whole, we hold that it does not create a trust relationship that would require the Comptroller to pay interest to owners.

**Unconstitutional Taking**

Having found that owners are not entitled to interest under the unclaimed property act, we next address Clark's claim that payment of interest is required by the constitution.  Clark does not contest a State's power to deem private property abandoned and allow that property to escheat to the State.[7]  *See Texaco, Inc. v. Short*, 454 U.S. 516, 530 (1982); *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 436 (1951).  Even when an owner of unclaimed property retains title, however, the State does not hold property in trust for the missing owners.

For the State to take possession, property must first be presumed abandoned under the statute.  *See* Tex. Prop. Code Ann. § 72.101 (property presumed abandoned if unclaimed for over three years).  As a general rule, the United States Supreme Court has held that private property may be deemed abandoned and that the State is not required to "compensate the owner for the consequences of his own neglect."  *Texaco, Inc.*,  454 U.S. at 530.  This principle has been relied upon to hold that other custodial escheat statutes do not violate the takings clause.  In *In re Folding*

---

[7] Under the common law, an owner could be shown to have abandoned property by proof of intent to relinquish a known property right.  *See, e.g., Huffington v. Upchurch*, 532 S.W.2d 576, 579-80 (Tex. 1976); *Railroad Comm'n of Tex. v. Waste Mgmt. of Tex., Inc.*, 880 S.W.2d 835, 843-44 (Tex. App.—Austin 1994, no writ).  Texas, like other states, has long provided by statute that property could be presumed abandoned by being unclaimed by its owner for a specified period of years.  *See* Act of March 21, 1885, 16th Leg., R.S., ch. 37, §§ 1-2, *reprinted in* 9 H.P.N. Gammel, The Laws of Texas 1822-1897, at 655-66 (Austin, Gammel Book Co. 1898) (repealed) (formerly Tex. Rev. Civ. Stat. art. 3272); Act of Aug. 8, 1961, 57th Leg., 1st C.S., ch. 21, § 1, 1961 Tex. Gen. Laws 49, 49-57 (repealed) (formerly Tex. Rev. Civ. Stat. art. 3272a).  The unclaimed property act—whose validity Clark does not challenge—is Texas's current enactment of this sort.

*Carton Antitrust Litigation*, the Seventh Circuit Court of Appeals considered the constitutionality of a statute providing that, after five years, unclaimed funds held in the registry of the court be deposited in the Treasury in the name and to the credit of the United States. 744 F.2d 1252, 1255 (7th Cir. 1984) (discussing 28 U.S.C.A. § 2042). Claimants were still permitted to petition the court for return of their funds. *Id*. The Seventh Circuit found no unconstitutional taking:

> Since any legitimate claimant has been afforded an adequate remedy against the United States, there is no bar to interim governmental use of the escheated money "deposited in the Treasury and to the credit of the United States."

*Id*. (quoting 28 U.S.C.A. § 2042). The same reasoning has been applied to defeat takings challenges to unclaimed property statutes in other states. *See Smolow v. Hafer*, 867 A.2d 767, 775 (Pa. Commw. Ct. 2005) (no unconstitutional taking where abandonment of property, not action of State, caused pecuniary loss); *Fong*, 117 Cal. App. 4th at 853 ("No unconstitutional taking occurs where a state exercises its right to take custody of abandoned property, as opposed to taking absolute title."). We conclude that this principle applies with equal force to Texas's unclaimed property act. Once the property is presumed abandoned, the State's lawful use of that property for its own benefit cannot be an unconstitutional taking. *See Texaco, Inc.*, 454 U.S. at 530; *In re Folding Carton Antitrust Litigation*, 744 F.2d at 1255; *Smolow*, 867 A.2d at 775; *Fong*, 117 Cal. App. 4th at 854.

Arguing that *Texaco, Inc. v. Short* and its progeny do not apply to this case, Clark directs us to cases discussing an owner's right to interest earned on interpleader funds and IOLTA[8]

---

[8] The Interest on Lawyers Trust Account (IOLTA) program requires certain client funds held by an attorney to be deposited in an interest bearing account. *Phillips v. Washington Legal Found.*, 524 U.S. 156, 159-60 (1998). The interest income generated by the fund is paid to a foundation that finances legal services for low-income individuals. *Id*.

accounts. In *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164-65 (1980), the United States Supreme Court held unconstitutional a statute allowing a county to retain interest earned on an interpleader fund deposited in the registry of the court. The United States Supreme Court rejected the lower court's characterization that funds deposited into a court's registry temporarily assumed the status of "public money." *Id*. at 163. The Court noted that the interest on interpleader funds retained by the county bore no relation to any burden on the court and, thus the state's use of the funds while in the court's registry violated the Takings Clause of the Fifth Amendment. *Id*. at 164. The Court explained that "the earnings of a fund are incidents of ownership of the fund itself and are property just as the fund itself is property." *Id*. In *Sellers v. Harris County*, the Texas Supreme Court similarly held that a county may not constitutionally retain the interest earned on interpleader funds. *See* 483 S.W.2d 242, 243 (Tex. 1972) (interpleader funds held "in trust" and earnings on fund are incident of ownership). The United States Supreme Court has also held that interest earned by IOLTA accounts is the private property of the owner of the principal. *Phillips v. Washington Legal Found.*, 524 U.S. 156, 172 (1998). Citing *Webb's* and *Sellers*, the Court emphasized the common law notion that "interest follows principal." *Id*. at 165. Clark would have us apply this legal axiom to unclaimed property.

But Clark overlooks an important distinction between the interpleader and IOLTA cases and the issue of interest earned on unclaimed property. Interpleaded funds and funds deposited in an IOLTA account are held in trust for the owner. As we have discussed, unclaimed property funds are not. There is also no question as to who has asserted ownership of the interpleaded or IOLTA funds. By contrast, property delivered to the Comptroller as "unclaimed" is presumed

13

abandoned. *See* Tex. Prop. Code Ann. §§ 72.101, 74.301. Until a missing owner asserts a claim, it is wholly appropriate for the Comptroller to use unclaimed property for the benefit of the State instead of allowing a windfall to a private holder or permitting the funds to lie fallow. *Cf. Texaco, Inc.*, 454 U.S. at 530.

We hold that the unclaimed property act does not require the State to hold unclaimed property in trust or otherwise require payment of interest to owners. Moreover, the State's use of unclaimed property and retention of any interest earned before the owner asserts a claim is not an unconstitutional taking. Accordingly, we overrule Clark's constitutional issues and need not address his other issues.

**CONCLUSION**

We affirm the district court's summary judgment, its denial of class certification, and its dismissal of the suit.

 

Bea Ann Smith, Justice

Before Justices B. A. Smith, Pemberton and Waldrop

Affirmed

Filed: February 3, 2006

14