# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 28, 2009

Charles R. Fulbruge III
Clerk

No. 08-40230

In the Matter of:
LEASE OIL ANTITRUST LITIGATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

J. TOM POYNOR,

Movant-Appellee,

versus

CHESAPEAKE EXPLORATION LIMITED PARTNERSHIP,
as Successor to DLB Oil & Gas, Inc., Hugoton Energy Corporation,
and Anson Corporation,

Movant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE MCMAHON FOUNDATION and J. TOM POYNOR,

Plaintiffs-Appellees,

versus

CHESAPEAKE EXPLORATION LIMITED PARTNERSHIP,
as Successor to DLB Oil & Gas, Inc., Hugoton Energy Corporation,
and Anson Corporation,

Movant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE MCMAHON FOUNDATION; J. TOM POYNOR;
and MARY ALMA POWELL,

                                         Plaintiffs-Appellees,

versus

CHESAPEAKE EXPLORATION LIMITED PARTNERSHIP,
as Successor to DLB Oil & Gas, Inc., Hugoton Energy Corporation,
and Anson Corporation,

                                         Movant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before SMITH, DENNIS, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The State of Texas ("Texas") appeals the denial of its motion to intervene. We reverse and remand.

## I. Facts and Procedural History

This appeal arises from a class action that has been ongoing for over a decade. The plaintiff class claimed that oil companies were not paying the fair market value of oil at the well.[1] A settlement was reached, and settlement checks were distributed between October 1999 and September 2002. Because the case

---

[1] The details of the underlying dispute are not relevant to the current appeal. The facts and procedural history are recounted in *In re Lease Oil Antitrust Litig. (No. II)*, 16 F. Supp. 2d 744, 745-47 (S.D. Tex. 1998).

had been pending for so long before the funds were distributed, some members of the plaintiff class could not be located. Among the unclaimed funds was $4,638,283 owed to members whose last known addresses were in Texas.

The district court decided to use a *cy pres* distribution of the unclaimed funds to a third party.[2] The recipient it chose was an air quality monitoring project. Because all class members were involved in the oil industry, that environmental project was deemed to benefit them. The *cy pres* plan was discussed during telephonic hearings in March and December 2006 and March 2007.

Texas was not a party and therefore did not participate in the hearings. Class counsel, however, understood that Texas was interested in the proceedings and kept the Texas Attorney General's office informed of the discussions. Class counsel also told the district court about its communications with that office and of Texas's position on the *cy pres* plan.

Texas opposed any *cy pres* distribution from the beginning and indicated to class counsel that it might intervene to prevent it. At the March 2006 hearing, class counsel informed the court that she "did call the [Texas] Attorney General's Office, and they made it clear that if there ends up being a significant amount of [unclaimed] money, they might be willing to challenge a court order that sends money anywhere other than to the States." Nevertheless, the district court approved the *cy pres* distribution in an order on December 12, 2007. In anticipation of an appeal by Texas, the court set aside the Texas unclaimed funds in a separate account and sent a copy of the order to the state.

On January 11, 2008, Texas filed a motion to intervene and a motion to reconsider. The district court denied both. Texas then brought this appeal.

In attempting to intervene, Texas relies on state law that requires that persons in possession of unclaimed property belonging to someone else must de-

---

[2] The *cy pres* distribution included all unclaimed funds, including those owed to plaintiffs with last-known addresses in other states.

liver it to the state comptroller. *See* TEX. PROP. CODE § 74.301 (Vernon 2007). Property is considered unclaimed or abandoned if its owner cannot be located for three years and the last-known address of the owner is in Texas. *See id.* §§ 72.001, 72.101.

## II. Issues on Appeal.

Texas argues that it should have been granted leave to intervene as of right in the district court. The test on appeal for intervention as of right is a four-part test, the first of which has four sub-parts. Federal Rule of Civil Procedure 24(a) states,

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The four parts of the intervention test are therefore (1) timeliness, (2) an interest relating to the action, (3) that the interest would be impaired or impeded by the case, and (4) that the interest is not adequately represented by existing parties. *See Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994); 6 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 24.03[1][a], at 24-21 through 24-22 (3d ed. 2008). The first part, timeliness, is governed by the four-part test in *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977): (1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances. *See id.* at 263-66; *accord Ruiz v. Estelle*, 161 F.3d 814, 827-28 (5th Cir. 1998).

Although the right to intervene is in general an issue of law that we review

*de novo*, *Sierra Club*, 18 F.3d at 1205, the determination of timeliness is "largely committed to the discretion of the district court," *Stallworth*, 558 F.2d at 263, so we review that decision for abuse of discretion, *id.; Sierra Club*, 18 F.3d at 1205 n.2. The criteria are mandatory, but "[r]ule 24 is to be construed liberally, . . . and doubts resolved in favor of the proposed intervenor." 6 MOORE ET AL., *supra*, § 24.03[1][a], at 24-22 (citations omitted).

## A. Timeliness.

### 1. Length of Time Since Learning of Interest in the Action.

The first timeliness factor is "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene." *Stallworth*, 558 F.2d at 264. The timeliness clock does not start running until the putative intervenor also knows that class counsel will not represent his interest. *Sierra Club*, 18 F.3d at 1206. The district court found that Texas had actual knowledge of its interest in the case by March 2006 at the latest.

Texas argues that it was not aware of its interest until it received notice of the December 12, 2007, order, which declared the existence of unclaimed checks and created the *cy pres* distribution. Texas received formal notice of the order on January 2, 2008, and filed its motion to intervene just nine days later.

There is ample evidence, however, that Texas was aware of its interest quite some time earlier. Class counsel reported to the district court that it had kept Texas informed of the possibility of a *cy pres* distribution. In several hearings, the court noted Texas's opposition to the idea and its possible intent to intervene. The hearing transcripts show that Texas knew the case was pending. Class counsel represented to the district court on at least three occasions that it had been in touch with the Texas Attorney General's office regarding the progress of the case.

The transcripts also indicate that Texas knew its interests were not being represented by class counsel. At the March 2006 hearing, class counsel reported contacting the Texas Attorney General's office about the unclaimed settlement funds. Texas's opinion was that the money should go to the state, not a *cy pres* distribution. From the posture of class counsel, working toward the *cy pres* settlement, Texas should have been aware that its interests were not being represented by any of the parties. The timeliness of the motion to intervene should thus be measured from March 2006, almost two years before it was filed.

## 2. Prejudice to Existing Parties if Motion To Intervene Is Granted.

The second timeliness factor weighs the prejudice to other parties caused by the delay in seeking intervention. Any potential prejudice caused by the intervention itself is irrelevant, because it would have occurred regardless of whether the intervention was timely. *Stallworth*, 558 F.2d at 265. The only proper concern is how much more prejudice would come from Texas's intervening in January 2008 compared to its intervening in March 2006.

The impact on other parties is minimized by the nature of Texas's interest and by actions the district court took to segregate the funds in question. Texas is not asking to reopen the underlying settlement agreement. No new negotiations need to take place. Texas has no quarrel with the amount of the settlement or the distribution of funds among class members.

It would have been more convenient for the district court to hear Texas's arguments about the unclaimed funds at the time the *cy pres* plan was being developed, but the other parties are not disadvantaged by the delay. Inconvenience for the district court is not the same as prejudice to parties. "[I]nterfere[nce] with orderly judicial processes . . . has nothing to do with timeliness" and is not a relevant factor when analyzing intervention as of right. *Stallworth*, 558 F.2d at 266.

The actions of the district court prevented prejudice to one party that might otherwise have been disadvantaged by a late intervention. In a companion to this case, Chesapeake Energy Limited Partnership ("CELP") is appealing another aspect of the same settlement. Its appeal could not be brought until a final order was issued in the main case.[3] Reopening the case to allow Texas to intervene could have delayed CELP's appeal. The district court mitigated this problem, however, by segregating the funds relevant to CELP's appeal in a separate account. Those funds are therefore not endangered by Texas's intervention. CELP's claims can be addressed independently.

Even if CELP's appeal would have been delayed by Texas's late intervention, that delay would have been short. The district court has already considered the claims Texas plans to make, so reconsidering them in light of any new arguments Texas brings in person could not have taken much time.

### 3. Prejudice to Texas if Its Motion To Intervene Is Denied.

By intervening, Texas is attempting to protect its interest in the Texas unclaimed funds involved in the *cy pres* settlement. To determine whether Texas would be prejudiced by being denied intervention, we examine what opportunities it would have to claim those funds if it cannot intervene.

If the motion is denied, Texas's opportunity to appeal would be quite limited. Non-parties are generally not permitted to appeal a ruling in which they did not participate. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988). Texas could have tried to appeal as a non-party under *Castillo v. Cameron County, Texas*, 238 F.3d 339, 349-51 (5th Cir. 2001), but it would have had to rely on a vague balancing test to overcome the general presumption against non-party appeals. Moving to intervene as of right was a much more certain way of proceeding.

---

[3] *See McMahon Found. v. Amerada Hess Corp.*, 98 F. App'x 267, 271 (5th Cir. 2004) (dismissing CELP's earlier appeal for want of jurisdiction based on the lack of a final order).

Texas also might have pursued its interest by suing the settlement administrator in state court to compel delivery of the unclaimed funds. *See* TEX. PROP. CODE § 74.709 (Vernon 2007). If Texas won such a suit, however, it would create a legal morass. The settlement administrator would be presented with conflicting federal and state orders regarding the same property. Texas might be unable to enforce its state court order. Intervening in the existing federal lawsuit is the most efficient, and most certain, way for Texas to pursue its claim. Denying that intervention would certainly cause prejudice to Texas.

### 4. Unusual Circumstances.

Although it is rare for intervention to be granted after a final order has been entered, *see Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996) (en banc), it is sometimes permitted. Post-judgment intervention usually causes unjustifiable prejudice to other parties, but this case is one of those rare instances in which post-judgment intervention is timely and proper.

Texas waited two years after it became aware of its interest in the suit and should have acted sooner. The lack of real prejudice to existing parties from intervention, and the significant prejudice to Texas if intervention is not allowed, overcome the fact of the delay, however. Additionally, the structure of the final order, with funds set aside to allow Texas to appeal without injuring other parties, weighs heavily in favor of intervention. The district court abused its discretion by finding Texas's motion to intervene untimely.

### B. Additional Intervention Factors.

In addition to timeliness, Texas must demonstrate an interest that will be impaired or impeded if Texas cannot intervene and that is not adequately represented by the existing parties. To support intervention as of right, Texas must show that it has "a direct, substantial, legally protectable interest in the action,

meaning 'that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *Cajun Elect. Power Coop. v. Gulf States Utils., Inc.*, 940 F.2d 117, 119 (5th Cir. 1991) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984) (en banc) ("NOPSI")). Texas asserts two interests. First, it claims that it stands in the shoes of the owners of the unclaimed property and protects their interests under state law. Second, it claims an interest in the investment income that can be earned on the property until it is claimed. Texas argues that neither of these interests is adequately represented by class counsel.

We reject Texas's first purported interest. Texas does not a represent the property owners. State law does not create a custodial trust relationship between them and the state. *See Clark v. Strayhorn*, 184 S.W.3d 906, 912-13 (Tex. App––Austin 2006, pet. denied). The state is not required to pay interest earned from the property to the original owners. *See id.* It must surrender only the original value of the property when the owner claims it. This relationship does not allow Texas to "stand in the shoes" of the property owners, because Texas is not representing the interests that the property owners would claim for themselves and may indeed have conflicting interests.[4]

Even if Texas were permitted to represent the interests of unclaimed property owners, it would still not satisfy the final prong of the intervention test under this theory, because class counsel has been charged with representing the interests of the absent property owners. When class counsel has been properly appointed, the state cannot intervene under the guise of representing owners of unclaimed property. *See Paterson v. Texas*, 308 F.3d 448, 451 (5th Cir. 2002). "The class members are represented by class representatives, who satisfied the district court that they met the representation requirements of federal law and

---

[4] *See, e.g.*, *Clark*, 184 S.W.3d at 908 (appellants suing state for interest on unclaimed property).

that the settlement was fair. The class representatives, not the State, are by federal law the parties authorized to prosecute and settle the claims of the class members." *Id.*[5]

Texas does have its own interest in the litigation, however. Texas law assigns the interest accrued from unclaimed property to the state, which thus has a financial interest in the investment income generated by the funds until the principal is claimed by the owners. That interest is not directly related to the underlying dispute but is sufficiently related to the litigation. Texas presents a substantial interest in a fund that is being distributed in the settlement of the underlying action.[6] An interest solely related to the terms of a settlement can support intervention.[7] Additionally, Texas's claims relate to the distribution of unclaimed settlement funds, which is an issue that must be decided in the action regardless of whether it intervenes. This distinguishes the present situation from interventions that would add new issues to an existing case.[8]

"[A]n economic interest alone is insufficient" to intervene. *NOPSI*, 732 F.2d at 466. In *NOPSI*, the city and several other customers of an electric company moved to intervene in a rate dispute between two electric companies, on the theory that the rates charged between the companies would affect the rates

---

[5] State law apparently allows the state to intervene in a state class action to represent the interests of unclaimed property owners under this theory. *See State v. Snell*, 950 S.W.2d 108 (Tex. App.—El Paso 1997, no writ). State law, however, is not relevant to the question whether this theory justifies intervention as of right under the federal rules.

[6] *See* 6 MOORE ET AL.*, supra*, § 24.03[2][a], at 24-26 ("Motions to intervene in which the proposed intervenor advances a clear property interest present the easiest cases for intervention.").

[7] *See Ford v. City of Huntsville*, 242 F.3d 235, 239-41 (5th Cir. 2001) (deciding that newspaper may intervene to challenge confidentiality agreement between settling parties).

[8] *See, e.g.*, *Howse v. Canada Goose I*, 641 F.2d 317 (5th Cir. Unit B Apr. 1981) (stating that shipyard cannot intervene with contract claim in suit for unpaid wages involving vessel docked at the shipyard).

ultimately paid by consumers. *Id.* at 460-61. We held that "an economic interest alone is insufficient, as a legally protectable interest is required for intervention under Rule 24(a)(2), and such intervention is improper where the intervenor does not itself possess the only substantive legal right it seeks to assert in the action." *Id.* at 466.

Unlike the putative intervenor in *NOPSI*, Texas *does* have a legally protectable interest: a property right in interest from the unclaimed funds that is recognized under state law. *See* TEX. PROP. CODE § 74.709 (Vernon 2007). Texas's situation is therefore distinguishable from the unsupported economic interest in *NOPSI*.

There is no question that Texas's interest will be impaired or impeded if it is not permitted to intervene. Barring intervention, the funds will be distributed to the air quality monitoring project, and the state will not be able to claim the interest. The possibility of bringing a state action to compel the settlement administrator to turn over the unclaimed property, as described above, does not change the analysis. The *cy pres* distribution order creates a strong possibility of a practical harm to Texas's property interest, which is sufficient to show impairment. *See* 6 MOORE'S FEDERAL PRACTICE, *supra*, § 24.03[3][a], at 24-41 through 24-42.

Lastly, Texas must show that its interest is not adequately represented by existing parties. That determination is also straightforward. Class counsel was appointed to represent the interests of the plaintiff class, including the owners of unclaimed property. The interests of the class members may be served indirectly by giving unclaimed funds to a charity project that benefits their industry. The interests of the state in holding those funds and receiving interest, however, is quite different.

In summary, Texas has met the requirements for intervention as of right. Its motion was timely, and it presented an interest in the litigation––the proper-

ty interest in investment income from unclaimed settlement funds—that is direct and substantial, would be impaired absent intervention, and is not represented by any of the existing parties. We therefore REVERSE the denial of intervention and REMAND for further proceedings.